DELLS vs. KENNEDY and others.

*April 5 — June 23, 1880.*

CONSTITUTIONAL LAW. *Registration of voters.*

That part of sec. 8, ch. 235, Laws of 1879, which provides that no vote shall be received at any general election unless the name of the person offering to vote be on the register completed by the board of registry as previously provided in said act, excepting only the case of persons who may have become qualified voters before such election but after the completion of such register — is in violation of sec. 1, art. III of the state constitution, which defines the qualifications of electors; and that provision being an essential part of the act, without which it cannot be supposed that the statute would have been enacted, the whole act is invalid.

TAYLOR, J., dissented.

APPEAL from the Circuit Court for *Milwaukee* County.

Plaintiff appealed from an order sustaining a demurrer to the complaint. The case is stated in the opinions.

For the appellant there were briefs by *Howard Morris*, and oral argument by *Mr. Morris* and *Samuel Howard*.

*L. S. Dixon*, for respondents.

ORTON, J.  This action is brought against the defendants for refusing, as the inspectors of election of the first precinct of the fifth ward of the city of Milwaukee, the vote of the plaintiff offered at the general election of 1879.  The complaint shows that the plaintiff had all the° qualifications of a legal voter, at such election and in such precinct, required by article III, sec. 1, of the constitution of the state, and the general election laws, but fails to state that he had complied with the provisions of chapter 235 of the Laws of 1879, requiring his previous registration to entitle him to vote, or that he was within the exception mentioned in the eighth section of said act.  This act requires, as a prerequisite to the exercise of the constitutional right to vote at any general election named in the act, the previous registration of the elector, unless he becomes a qualified voter after the last day for completing the registry and before the election.  The demurrer to the complaint was sustained by the circuit court, on the ground that the plaintiff had not become a registered voter as required by said act, and was not within said exception.  Section 8 of the act absolutely prohibits any elector from voting at such election unless so registered or within such exception; and the only question, therefore, for the consideration of this court on this appeal is of the validity of said act.  A few plain and unquestionable propositions will sufficiently present the views of this court upon the question of the constitutionality of this act.

The elector possessing the qualifications prescribed by the constitution is invested with the constitutional right to vote at any election in this state.  These qualifications are explicit, exclusive, and unqualified by any exceptions, provisos or conditions; and the constitution, either directly or by implication, confers no authority upon the legislature to change, impair, add to or abridge them in any respect.  In the language of the chief justice in *Page v. Allen*, 58 Pa. St., 346: "These are the constitutional qualifications necessary to be an elector.

They are defined, fixed and enumerated in that instrument. In those who possess them is vested a high, and, to a freeman, sacred right, of which they cannot be divested by any but the power which establishes them, viz., the people, in their direct legislative capacity. This will not be disputed. For the orderly exercise of the right resulting from these qualifications, it is admitted that the legislature must prescribe necessary regulations as to the places, mode and manner, and whatever else may be required to insure its full and free exercise. But this duty and right inherently imply that such regulations are to be subordinate to the enjoyment of the right, the exercise of which is regulated. The right must not be impaired by the regulation. It must be regulation purely, not destruction. If this were not an immutable principle, elements essential to the right itself might be invaded, frittered away, or entirely exscinded, under the name or pretense of regulation, and thus would the natural order of things be subverted by making the principal subordinate to the accessory. To state is to prove this position. As a corollary of this, no constitutional qualification of an elector can in the least be abridged, added to, or altered, by legislation or the pretense of legislation. Any such action would be necessarily absolutely void and of no effect."

The learned counsel of the respondents, in respect to the provisions of this law, used the following language in his printed argument: "No elector need lose his right to vote. No elector can do so except by his own default or negligence in these particulars." If this were a correct statement of the effect of this law, then it might not be obnoxious to objection in the particular which, in our opinion, renders it unconstitutional and void. By the effect of this law the elector *may*, and in many cases *must* and *will*, lose his vote, by being utterly unable to comply with this law by reason of absence, physical disability, or non-age, and an elector can lose his vote without his own default or negligence in these particulars.

This language of the learned counsel is most strikingly suggestive of the very vice of this law which is fatal to its validity. That vice is, that the law disfranchises a constitutionally qualified elector, without his default or negligence, and makes no exception in his favor, and provides no method, chance or opportunity for him to make proof of his qualifications on the day of election, the only time, perchance, when he could possibly do so. This law undertakes to do what no law can do, and that is to deprive a person of an absolute right without his laches, default, negligence or consent; and, in order to exercise and enjoy it, to require him to accomplish an impossibility.

No registry law can be sustained which prescribes qualifications of an elector *additional* to those named in the constitution, and a registry law can be sustained only, if at all, as providing a reasonable mode or method by which the constitutional qualifications of an elector may be ascertained and determined, or as regulating reasonably the exercise of the constitutional right to vote at an election. If the mode or method or regulations prescribed by law for such purpose and to such end, deprive a fully qualified elector of his right to vote at an election, without his fault and against his will, and require of him what is impracticable or impossible, and make his right to vote depend upon a condition which he is unable to perform, they are as destructive of his constitutional right, and make the law itself as void, as if it directly and arbitrarily disfranchised him without any pretended cause or reason, or required of an elector qualifications additional to those named in the constitution. It would be attempting to do indirectly what no one would claim could be done directly. It is quite immaterial to the point of this discussion what this court may have decided in respect to the registry law of 1864, or other laws, any further than the establishment of a principle which may be applicable to and govern this peculiar feature of the law of 1879; and the decisions of other courts

in respect to registry laws not having in effect this provision, need not be here reviewed.

Without further discussion of original principles, it is sufficient and conclusive of this case that this court, in *State ex rel. v. Baker*, 38 Wis., 71, virtually decided the question here raised, and established the principle which is applicable and fatal to this sweeping provision of disfranchisement found in section 8 of the law under consideration. In that case the registry of a precinct was defective in substance and form, and yet the electors named therein are held to have been entitled to vote at the election, because they had no notice of such defect, and were themselves not in fault. In the able discussion of the subject, as to the extent of legislative authority in regulating the exercise of the constitutional right to vote, by his honor the chief justice, which I need not generally repeat, it is said, touching this exact point: "The voter may assert his right, if he will, by proof that he has it; may vote, if he will, by reasonable compliance with the law. His right is unimpaired; and if he be disfranchised, it is not by force of the statute, but by his own *voluntary* refusal of proof that he is enfranchised by the constitution." And again: "So, one entitled to the franchise may be sick, or absent, or imprisoned, or otherwise disabled, at the time of the registry. But the constitution vests and warrants the right *at the time of election;* and every one having the constitutional qualifications *then* may go to the polls, vested with the franchise, of which no statutory condition precedent can deprive him, because the constitution makes him, by force of his present qualifications, 'a qualified voter at such election.'"

In case the voter knows, or has notice, that his name is *not* on the registry, the opinion further holds: "So that they have an opportunity, if they will, to remove the difficulty, each voter for himself, by complying with the statutory conditions. In such case, if a voter be disfranchised, he is by his own *omission* a *voluntary* party to his disfranchisement."

This language was clearly and pointedly illustrative of the real question in that case, and is authoritative in its application to the law of 1879, and conclusive of this case.

The prohibition in section 8 is clearly unconstitutional and void. This section is the only portion of the act which provides for the legal effect and consequences of the registration, or want of registration, required and regulated by the other portions of the act, and which are essential to the full force, purpose and efficiency of such registration, and of paramount importance, and constitute the only substantial change of, and material difference from, the general law of the state requiring registration; and it is therefore quite apparent that the legislature would not have enacted the other portions of the act had they foreseen that the courts would declare such part of section 8 unconstitutional and void. This case is therefore brought within the rule repeatedly recognized by this court for declaring the whole act void. *Slauson v. City of Racine*, 13 Wis., 398; *State ex rel. v. Dousman*, 28 Wis., 541; *Slinger v. Henneman*, 38 Wis., 504.

TAYLOR, J. · This appeal involves the question of the constitutionality of chapter 235, Laws of 1879 — an act providing for the registration of electors in cities of over 25,000 inhabitants. This act is substantially the same in its general provisions as chapter 264, Laws of 1877, and differs materially from the provisions of the general registry law, chapter 445, Laws of 1864, in but one respect. In section 8 of said act it is provided that no vote shall be received at any general election unless the name of the person offering to vote be on the register as completed by the board of registry, as provided in section 5 of the act, except as thereinafter provided. The exception is, that any one who shall have become a qualified voter of the election district after the last day for completing the registry, may vote at such election, upon making proof of that fact in the manner prescribed in said section. The same

provision is found in section 8, ch. 264, Laws of 1877; and a like provision is found in section 24, R. S. 1878, with a further exception that any person who was a voter at the last previous general election, and who was not registered, may vote upon making proof of that fact as provided in the act.

The corresponding provision in chapter 445, Laws of 1864, is found in section 7 of said chapter, and is as follows: " No vote shall be received at any annual election in this state unless the name of the person offering to vote be on the said registry made on the Tuesday and Wednesday preceding the election, unless the person offering to vote shall furnish to the board of inspectors his affidavit in writing, *giving his reasons for not appearing on the day for correcting the alphabetical list,* and prove, by the oath of a householder of the district in which he offers to vote, that he knows such person to be an inhabitant of the district, and, if in an incorporated city or village, giving the residence of such person within said district."

Under the present act governing electors in the city of Milwaukee, every person is prohibited from voting unless his name is duly registered according to law, except when he becomes a qualified voter of the election district after the completion of the registry and before the election. Under the registry law of 1864, every person not registered was prohibited from voting unless he furnished to the board of inspectors his affidavit giving his reasons for not registering, accompanied with the affidavit of a householder of the district showing that he was an inhabitant of the district.

The registry law of 1864 has been passed upon by this court in *State v. Hilmantel*, 21 Wis., 566; *State v. Stumpf*, 23 Wis., 630; *State v. Baker*, 38 Wis., 71; and in all these cases the law was held constitutional. It must be considered settled, therefore, that the legislature has the power to pass a registry law, and enforce the same; so far, at least, as to compel the elector who has not had his name placed upon the

registry, when one has in fact been made, or if none be made, to make proof of his right to vote on the day of the election in the way prescribed by the law, and also to show his reason for not registering, by his own oath,and on his failure to make such proof of his right to vote, and show his reason for not registering, his vote may be rightfully rejected.    The object of all registry laws is to ascertain, before the election day, who are the qualified electors in each election district, and to do away with the necessity, as far as possible, of investigating as to the qualifications of electors on the day of election, and to prevent fraudulent voting by giving publicity beforehand to the names of all persons who claim the right to vote at the coming election.    The right of the legislature to require this to be done, and the propriety of doing it, has been approved by this court in the cases above cited.

The only question remaining to be decided is, as was stated by the learned counsel who argued this case for the respondents, "whether the legislature can, anticipating the inconvenience, delays and trouble attending the investigation of such questions of fact on the day of the election, provide for their being investigated and settled in whole or in part, *prima facie* or absolutely, on some day or days before the day of election, and give to such provisions the force of law by sanctioning the receipt of votes only upon condition of such provisions being complied with by the electors offering to vote."

To my mind it seems very clear that if the legislature has any power to require a registration of the electors to be made previous to the day of election, and to compel the non-registered elector to give some good reason for his failing to procure himself to be registered before he shall be allowed to vote on the day of election, it has the same power to enforce the registration by depriving the elector of the right to vote unless he becomes registered as required by law.    If the legislature may compel the elector to give a reason for not registering, it may declare what shall be a sufficient reason, and

permit only such excuse for not registering as in its discretion it may deem a valid excuse.

If an excuse for not registering must be given in order to entitle the non-registered elector to vote, what shall be a sufficient excuse must either be declared by the legislature, or its sufficiency must be submitted to the judgment of the inspectors, or any excuse which the elector shall himself deem a sufficient reason for not registering must be accepted as sufficient. The practical interpretation given to the law of 1864 was to permit the elector himself to judge of the sufficiency of his reason for not registering; and the consequence was that the law imposed a great expense upon the state without preventing in any way the evils intended to be remedied thereby, and illegal voting was not prevented by the act, but was made easier of accomplishment under its provisions. As I understand it, the majority of the members of this court hold the law under consideration to be void because it does not provide some way by which an elector, who, by reason of sickness, absence or some other contingency, has been prevented from becoming registered, may still vote upon the day of election. I do not understand that they adopt the theory apparently sanctioned by the following language of the learned chief justice in the case of *State v. Baker*, 38 Wis., 71–86, that "every statute regulating it must be consistent with the constitutionally qualified voter's right of suffrage *when he claims his right at an election*. Then statutes may require proof of the right, consistent with the right itself. . . . It was undoubtedly competent for the legislature to provide for a previous registry of voters, as one mode of proof of the right, so that it should not be a condition precedent *to the right itself at the election*, but, failing the proof of registry, left other proof open to the voter *at the election, consistent with his present right.* . . . The statute imposes no condition precedent to the right; it only requires proof that the right exists. The voter may assert his right, if he will, by proof that he has it; may vote, if he will,

by reasonable compliance with the law. His right is unimpaired, and, if he be disfranchised, it is not by force of the statute, but by his own voluntary refusal of proof that he is enfranchised by the constitution. . . . Undoubtedly the statute authorizes a large supervision of the process of registry by voters, and voters may so supervise the process as to be fully advised of all irregularities and defects. But all such supervision is voluntary. The statute does not impose it as a duty, or as a burden on the right of suffrage, *and could not. The statute must be so construed as to reconcile all its provisions to the unimpaired, unincumbered right of suffrage at the election.*"

The italics are not in the reported opinion. It would seem, from the remarks of the chief justice above quoted, that he was of the opinion that no registry law could be valid which deprived the elector, who was such on the day of the election, of the right to vote, if he could then prove that he was such elector; and that no other condition or sanction could be given to a registry law except that it might compel the non-registered elector to prove his right to vote on the day of election in the manner pointed out by the law. He evidently does not recognize the right of the legislature to impose, as a condition of the non-registered elector's right to vote, that he shall give any reason for not having registered. It is his opinion that no registry law can be constitutional and valid which requires the elector to make proof of his right to exercise the elective franchise at any time before he offers his vote on the day of the election, and that any law which deprives him of the right to vote, unless he furnishes such evidence of his right before the day of election, is void. It is possible that I have misunderstood the meaning of the learned chief justice, but it appears to me that such is the fair construction of the language used; and in that view of the case every registry law must be so framed as to leave it optional with the elector whether he will register or not; and

such law can have no sanction, except a provision requiring the elector who declines to register to make proof of his right to vote when he offers to do so on the day of election. If that is the limit of power on the part of the legislature, then, in my opinion, it would be wisdom on its part not to exercise the power at all.

Holding the opinion which the learned chief justice does, he is most consistent in ignoring any right on the part of the legislature to impose any condition upon the non-registered elector which is not imposed upon the registered one, except the condition that he shall prove that he is in fact an elector on the day of the election. This proof the registered voter has made *prima facie* by procuring his name to be entered upon the register, and because the non-registered elector has not made such proof, he may be required to make it when he offers his vote. If it be admitted that the legislature may enforce the registry of electors by imposing any other condition than the proof of the right itself, then it must follow that what such other conditions shall be is a matter for the legislature, and their discretion in the matter cannot be questioned by this court except for gross abuse thereof.

If, as said above, the legislature may compel the elector to give a reason for not registering before he shall be allowed to vote, it may declare what shall be a sufficient reason, and thus defeat the right of every non-registered elector who cannot give the reason which the statute declares shall be sufficient to excuse his registry; and this is done in the registry law of Michigan, which was held a valid law by the supreme court of that state, as is hereinafter shown. When we admit that the legislature may impose any condition upon the non-registered voter other than that he shall prove that he is an elector of the district, with the qualifications prescribed by the constitution, then we surrender the whole matter to the discretion of the legislature, and it may impose such conditions as it shall deem proper, and as in its judgment will be efficient in compelling

the electors to register, and for that purpose may deprive the non-registered voter of the right to vote at the election.

While some of the conclusions of the learned chief justice in the opinion in the case of *State v. Baker* are not in harmony with the opinion of the court in the cases of *State v. Hilmantel* and *State v. Stumpf*, still the act of 1864 was held valid by the court in this last case, as it had been in the former cases. But it is said that the law now under consideration is void because it makes registry a prerequisite to the right to vote in all cases except where the elector becomes such after the last day for completing the registry; that the legislature has no power to make registry previous to the day of election a prerequisite to the right of voting; and that all registry laws in this state must still leave the elector the right to vote on the day of election, upon such reasonable conditions as the legislature may impose, taking a middle ground between the opinion of the late learned chief justice, as stated in *State v. Hilmantel* (that " the disability or disfranchisement is inseparable from the necessary protection. Perhaps it may be said that the protection can only be afforded by imposing the disability. Hold the act to be directory, and allow the electors to vote without their names being registered, and without the affidavit and oath prescribed in case they are not, and the object of the legislature would be entirely defeated. The effect of such construction would be fatal to all protective legislation, and would leave the election laws precisely as they stood before this statute was enacted "), and that of the present chief justice, who says, as above quoted, " that the statute must be so construed as to reconcile all its provisions to the unimpaired and unincumbered right of suffrage at the election.".

It is argued that the legislature has no power to impose any other conditions upon the right of the elector to vote than such as are prescribed by the constitution; and it is urged that a registry law which requires the elector to make proof

of his right to vote at any time before the day of the election is imposing a condition not recognized by the constitution. All agree that the legislature must necessarily prescribe the manner of voting, designate the officers who shall receive and canvass the votes, the place where the votes shall be received, and the form of the ballot voted, and may also prescribe what proof the elector shall make of his right to vote at an election, and generally do all that may be deemed reasonably necessary to secure a fair and honest vote of the electors. If, in the judgment of the legislature, it be necessary that the proof of the elector's right to vote at any election, in order to secure a fair and honest vote, shall be made on some convenient day or days previous to the day fixed for the election, what constitutional provision forbids the legislature from requiring such proof to be so made? Certainly the law which is under consideration is not onerous in its provisions, and every elector can make his proof by procuring his name to be entered upon the proper register at much less trouble and expense than would be required to make formal proof of his right to vote on the day of election; and yet it cannot be said that the legislature would not have the power to require each elector who offered to vote on the day of the election to furnish proof by his own affidavit, backed by the affidavit of some other person or persons, of his right to vote, and that on his failure to do so his vote should not be received.

This was so expressly held in the case of *State v. Baker*, and by this court long before in the case of *State v. Lean*, 9 Wis., 279. The late learned Justice PAINE, who delivered the opinion in that case, speaking of the provisions of chapter 85, Laws of 1859, which prescribed the method of proceeding upon the challenge of an elector, and particularly defined what questions the challenged elector should be required to answer under oath, in order to entitle him to vote, says: "This act, therefore, instead of prescribing any qualifications for electors different from those provided for in the constitution, contains

only new provisions to enable the inspectors to ascertain whether the person offering to vote possesses the qualifications required by that instrument; and certainly it is competent for the legislature to enact such. The necessity of preserving the purity of the ballot-box is too obvious for comment, and the danger of its invasion too familiar to need suggestion. While, therefore, it is incompetent for the legislature to add any new qualifications for an elector, it is clearly within its province to require any person offering to vote to furnish such proof as it deems requisite that he is a qualified elector. . . . It is true that section 14 provides that if any person challenged refuses to answer, his vote shall be rejected. But does that make the answering of the questions a new qualification for a voter? Certainly not. Under the law as it before existed, any one whose vote was challenged had to take an oath that he possessed the qualifications required by the constitution. If he refused, his vote was rejected. But this did not make the taking of the oath a new qualification, so as to invalidate the law. It was rejected only because he failed to furnish the proof required by law, showing his right to vote."

Experience has demonstrated that registry laws are necessary to insure a fair and honest vote in all large cities, and such laws have been enacted and enforced in such cities in very many of the states of the Union for many years. In order to preserve even a pretense of purity in elections in the large centers of population, it is necessary that evidence of this right of the electors to vote should be produced before the day of the election, in order to enable the real electors to vote on that day; and it would be highly inconvenient, if not impossible, to make the necessary investigations on that day. Registration is, in fact, nothing more than a method of taking evidence beforehand of the right of the elector to vote on the day of the election. The registry law in question in this case throws no obstructions in the way of the elector who desires to vote. If he voted at the last previous election, his name

is placed on the register without any action on his part; if he did not, he can have it placed there by appearing in person before the board, or by sending a written request to have it placed thereon. If his right to be registered is questioned, his name is placed thereon upon making the same proof he would be required to make if challenged on the day of election. There is no hardship in the law.

It is urged that the voter may be sick or absent or imprisoned on the days when the registry is made. The law provides for these cases so far as it is reasonable it should provide. If the elector is absent, the law advises him when the registry will take place, and he may send his application to be registered in writing; he need not appear in person. Even if he were imprisoned, his right to send a written request to be registered would hardly be denied him. But these are all questions addressed to the consideration of the legislature, and not to the court. It is for the legislature to say what shall be sufficient to excuse the elector from registering as required by law; and when the legislature has passed a law which gives ample opportunity for every elector to register if he will, the court is, in my opinion, transcending its power in declaring the law void because the legislature has said to the elector, Unless you register, you cannot vote. There does not appear to me to be any middle ground. The elector has the absolute right to vote on the day of election if he has then the qualifications of an elector under the constitution, and is then ready to make proof of his qualifications, as was stated by the chief justice in the case of *The State v. Baker;* or else he must, if required by law, furnish the proof of his right to vote by registering on the days fixed by the legislature previous to the day of election, or he may be prohibited from voting. That the elector may be absent on the days fixed for registering, that he may be sick or imprisoned, or that, in the hurry of business, he may wholly forget that he is required to register, until it is too late, cannot excuse the elector from doing that

which is necessary to secure a fair election. These accidents are not the fault of the law, and cannot affect its validity.

Every objection which is made to this law was made fifty years ago to a similar law in Massachusetts; and they were fully and most satisfactorily answered by Chief Justice SHAW in his opinion in *Capen v. Foster*, 12 Pick., 485. His argument in that case was so clear, exhaustive and satisfactory, and his conclusions so well established, that every court in the United States which has since had under consideration similar registry laws has followed and approved that decision, unless the case of *State v. Baker* be an exception. The law of Massachusetts which was under consideration in that case, was subject to every objection which can be urged against the law of this state now under consideration; and I therefore quote the reasons given by the learned chief justice for sustaining this law as a legitimate and proper exercise of the legislative power. The reasons then given have stood the test of time, and met the approval of every court which has since been called upon to pass upon like questions. The argument is so complete in that case, I could but repeat what was then said if I should attempt to use my own language, and weaken its force for lack of ability to restate it in the clear, terse and exactly accurate language of the learned chief justice. The learned justice starts out with a full recognition of the importance of the question. He says:

"Questions affecting the construction of the constitution of the commonwealth, and the political and civil rights and privileges of the citizens depending upon it, are entitled to the fullest and most deliberate consideration, when drawn into judicial discussion. Upon a correct decision of these, the security and harmony of our well-balanced system of free and popular government mainly depend." After discussing a question not pertinent to the question now in issue, he then gives a synopsis of the registry law then under consideration, and proceeds to state the real objection made to the constitution-

Dells vs. Kennedy and others.

ality of the law, as follows: "In the particular provision in regard to which the validity of the law is now called in question, viz., *that no person shall vote at an election whose name is not previously placed on the list of voters,* . . . it appears by the facts agreed, in the present case, that the name of the plaintiff was not borne on the list of voters at the time his vote was rejected, and it does not appear that he had previously examined the lists, or applied to have his name inserted on the lists. By the plain and express terms of the law, the plaintiff, under these circumstances, was prohibited from voting. By asserting the right, therefore, the plaintiff puts in issue the validity of these provisions of the law; and the case for the plaintiff is put upon the ground that such a provision is a restraint upon the right of voting inconsistent with the privilege secured by the constitution to the citizens; that these constitutional privileges are above and beyond the control of the legislative power; and that all such laws are therefore unconstitutional, inoperative, and void. This is the question which the courts are now called upon to decide.

"On the part of the plaintiff it is contended that the constitution itself has provided the qualifications of voters; that the law in question prescribes a new and additional qualification; that as such it operates as a restraint upon the larger privilege allowed by the constitution itself, which cannot be done by an act of legislation.

"On the other hand it is argued, that, the right of suffrage being secured by the constitution to persons having certain specified qualifications of age, sex, residence, property, and contribution to public burthens, it was for the constitution itself either to direct in detail the time, place, and manner in which this constitutional right should be exercised, or to leave this to be regulated by law; that so far as this is done by the constitution itself, in plain terms or by necessary implication, it is binding and conclusive; but where it is not so done it is

competent for the legislature to provide for the exigency by a law acting uniformly throughout the commonwealth.

" And this court is of opinion that, in all cases where the constitution has conferred a political right or privilege, and where the constitution has not particularly designated the manner in which that right is to be exercised, it is clearly within the just and constitutional limits of the legislative power to adopt any reasonable and uniform regulations in regard to the time and mode of exercising that right, which are designed to secure and facilitate the exercise of such right in a prompt, orderly, and convenient manner. Such a construction would afford no warrant for such an exercise of legislative power as, under the pretense and color of regulating, should subvert or injuriously restrain the right itself."

The learned chief justice, after commenting upon certain laws regulating the time, place and manner of voting, and of counting and returning the same, as instances of the absolute necessity of action upon the part of the legislature in order to secure to the elector the right conferred by the constitution, then cites a part of the constitution of Massachusetts, which is more particular in its details as to how the right of suffrage in certain cases shall be exercised, viz.:

" That part of the constitution which provides for the election of senators and counsellors goes more into detail. It directs that a meeting of the inhabitants of each town shall be held on the first Monday of April annually (since altered to another day), to be called and warned as therein required, and prescribes the qualifications of voters. It then goes on to provide that the selectmen of the several towns shall preside at such meetings impartially, and shall receive the votes of all the inhabitants of such towns present and qualified to vote for senators."

It will be seen that this provision of the constitution of Massachusetts is much more particular and specific in its pro-

Dells vs. Kennedy and others.

visions as to the manner of exercising the elective franchise than anything to be found in the constitution of this state; in fact, our constitution makes no provision upon the subject, except that it provides that the votes shall be given by ballot, and fixes the time for holding the general elections.    The question of the right of the plaintiff to vote in that case without being registered arose under this provision of the Massachusetts constitution, as the statement of the case says that he offered to vote at the annual legal meeting in April, at the election for governor, lieutenant governor, and senators.    After stating his opinion that under this provision of the constitution the authority to judge of the qualifications is vested in the selectmen of towns, so long as that form of municipal organization remains, the learned justice continues:

"Still, the constitution is wholly silent in regard to the time, place, and manner in which such selectmen shall receive evidence of the qualifications of voters, and how the result shall be ascertained, and the evidence of it manifested and preserved.

"The right of any individual person claiming the privilege of voting may involve an inquiry into the fact of citizenship, age, domicile within the commonwealth, domicile within the town or district, the payment of taxes, exemption by law from the payment of taxes, and the fact of his being a pauper or under guardianship, or otherwise.    All these are questions of fact, open to proof of various kinds, and sometimes, though rarely, requiring considerable research and investigation.    Is there anything in the above recited provision of the constitution which requires the selectmen to go through this investigation during the progress of the polling, and whilst many other citizens, whose right is unquestioned, and proved by their names being previously entered on the list, are waiting to give in their ballots and retire?    There is no express requirement, and we think there is no implication, arising either from the terms of the constitution or from the nature and

purposes of the right of voting, which obliges the selectmen to perform this duty whilst in the actual performance of other positive duties, required by the express direction of the constitution, and in the careful, exact, and prompt performance of which the public, the whole body of qualified voters, have a deep interest.

"The constitution, by carefully prescribing the qualifications of voters, necessarily requires that an examination of the claims of persons to vote, on the ground of possessing these qualifications, must, at some time, be had by those who are to decide on them. The time and labor necessary to complete these investigations must increase in proportion to the increased number of voters; and, indeed, in a still greater ratio in populous commercial and manufacturing towns, in which the inhabitants are frequently changing, and where of necessity many of the qualified voters are strangers to the selectmen.

" If, then, the constitution has made no provision in regard to the time, place, and manner in which such examination shall be had, and yet such an examination is necessarily incident to the actual enjoyment and exercise of the right of voting, it constitutes one of those subjects respecting the mode of exercising the right, in relation to which it is competent to the legislature to make suitable and reasonable regulations, not calculated to defeat or impair the right of voting, but rather to facilitate and secure the exercise of that right.

"And this court is of opinion that the provision in the general law regulating elections, and that in the act incorporating the city, which require that the qualifications of voters shall be previously offered and proved in order to entitle them to vote, and that their names shall be entered upon an alphabetical register or list of voters, is highly reasonable and useful, calculated to promote peace, order and celerity in the conduct of elections, and as such to facilitate and secure this most precious right to those who are by the constitution en-

titled to enjoy it; that it cannot be justly regarded as adding a new qualification to those prescribed by the constitution, but as a reasonable and convenient regulation of the mode of exercising the right of voting, which it was competent to the legislature to make; and, therefore, that these legal enactments, not being repugnant to the constitution, are valid and binding laws, to which both voters and presiding officers at elections are authorized and bound to conform.

"In the manner in which these lists are framed effectual care seems to be taken to secure the rights of electors. The lists are first to be prepared by the collectors of taxes, and submitted to the selectmen, who are to revise and publish the same for the inspection of all interested. They are to be in session a sufficient length of time shortly before the election, and for an hour at least on the day of the meeting, and before the opening of the meeting, to receive evidence of the qualifications of those whose names may have been omitted. *Nothing, therefore, but the carelessness or neglect of the voter himself, or some accident not attributable to the law, or the officers who are to execute it,* can deprive him of the power of proving his right and exercising his privilege; and against these it would be difficult, either by legal or constitutional provisions, entirely to guard."

It will be seen that the only substantial difference between the registry law of Massachusetts and that now under consideration is, that the former provides that the board shall be in session one hour on the day fixed for the election, but before the voting commences, for the purpose of revising the registry, and placing thereon the names of those who should then apply for registry and make proof of their right. This difference is not one which affects the principle of the law or the power of the legislature. In both cases the only question is as to the power of the legislature to provide that the elector shall register before he presents himself at the polls with his vote on the day of election. If the legislature has the power

to compel the elector to make proof of his right to vote by becoming registered before the election at which he offers to vote takes place, then the question as to the time when he shall make such proof is for the legislature to determine, and a court would not declare the law void because the legislature might deem it wise that the proof should be made one, five or ten days before such election. Such law would not be objectionable because it fixed the last day for registering six days before the election, if, as our law does, it provided a way for permitting all those who become electors after the last day to vote at such election. There is no greater hardship in requiring the elector to register six days before the day of the election than one day before, or in requiring him to do it early in the morning on the day of the election, and before the polls of the election are opened. The contingency of absence, sickness, or imprisonment at the time fixed for registering, would be as likely to happen one day as on another.

In *Hyde v. Brush*, 34 Conn., 454, the court sustained a registry law which provided that no person should vote unless his name was on the registry; and the law of Connecticut provided, as our own law does, that the registry should be completed on the Wednesday before the election, except that persons who became electors by naturalization or age after that day might be entered on the register after that date. In *People v. Kopplekom*, 16 Mich., 342, the supreme court of that state unanimously declared the registry law of the state constitutional and valid, which prohibited any voter from voting whose name was not registered. The only difference between that law and the one under consideration in this case is, that it permitted, in the discretion of the inspectors, a person to register and vote upon the day of the election upon his satisfying the inspectors, by his testimony under oath, that he was a qualified elector, and " that, owing to sickness or bodily infirmity of himself or some near relative residing in the same household (giving the name of said relative), or owing to his absence

from the township on public or official business, or his own business, and without intent to avoid or delay his registration during the then last session of the board, he has been prevented from causing his name to be previously registered; and also producing some qualified elector, not a candidate for office at such election, to make oath before the inspectors that he is well acquainted with the applicant for registry, and that he has good reason to believe, and does believe, that all the statements of the applicant are true."

In *Edmonds v. Banbury*, 28 Iowa, 267, the supreme court of Iowa held a registry law valid which prohibited the elector from voting unless his name appeared on the registry made and corrected previous to the election, but allowed the non-registered elector to vote provided he made an affidavit showing that he was a qualified elector, and also "showing a proper reason for not appearing before the board on the day for correcting such register, and the affidavit of a person whose name is on the register that he knows such person to be a resident of the township."

In *People v. Laine*, 33 Cal., 55, and *Webster v. Byrnes*, 34 Cal., 273, the supreme court of California held a registry law valid which absolutely prohibited any person from voting whose name did not appear upon the register or poll list previously prepared. The law is very elaborate in its provisions; and although the elector may, under certain circumstances, have his name entered on the poll list at any time before the poll of the election is opened, on the day of election, yet in order to get it entered thereon after thirty days before the day of the election, he must, in addition to further proofs, furnish the board of registration his affidavit setting forth reasons satisfactory to the board why he did not apply and procure the enrollment of his name on said poll list previous to said thirty days.

In New York there has been a registry law for the cities of the state for more than fifteen years, in all respects like the law

now under consideration, except that the law of 1865 provides that the board of registry shall be in session on the Monday before the election for the purpose of making corrections and revising the same; and the law as amended in 1872 provides that the registry shall be completed on the Saturday next before the election; but both the law of 1865 and that of 1872 absolutely prohibit every person from voting whose name is not on the register; and its constitutionality has never been questioned by the courts or the profession of that state. In the only cases which have been brought to our notice in the courts of that state in which the validity of the law might have been considered, it does not appear that its invalidity was suggested either by the counsel or the court. *People v. Thacher*, 55 N. Y., 525; *People v. Wilson*, 62 N. Y., 186. It would seem highly improbable that a law which infringed the constitutional rights of the electors of that great state would be quietly submitted to and remain unquestioned by the electors, the legal profession, and the courts of the state, for fifteen years and more.

In *Byler v. Asher*, 47 Ill., 101, it was held that the registry law of Illinois was a valid law. This law is similar in all respects to the act of 1864 of this state, except that the non-registered voter was allowed to vote on making proof in the manner prescribed in the statute of his right to vote, on the day of the election, without showing any excuse for not registering. In this case the learned judge who delivered the opinion says: " There can be no question that the legislature may provide all reasonable safeguards to preserve the ballot-box from fraud, and to maintain the purity of our elections. As the wisdom of our laws, and the fair and impartial administration of justice, depend upon the officers chosen by the people, and even the perpetuity of our present form of government can only be maintained by preserving our elections free from fraud and corruption, all reasonable requirements for the purpose, not calculated to abridge the

elective franchise, are within the scope of the legislative power."

*Davis v. School District*, 44 N. H., 398, although not a case arising under a registry law, involved the same principles, and the court cited *Capen v. Foster* with approval.

In the states in which the decisions above cited were made, there are no constitutional provisions prescribing the manner in which the elective franchise may be exercised, more specific than or differing materially from those found in the constitution of this state.

The question of what is and what is not a reasonable regulation upon this subject, is addressed, in the first instance, to the legislature; and when the legislative department has prescribed a regulation which, in its wisdom, it deems a reasonable one, the courts will not hastily set such legislative action aside on the ground that the regulation is unreasonable. Any regulation which was necessarily calculated to abridge the elective franchise should be set aside by the courts, not on the ground that it was an unreasonable regulation, but on the ground of want of power in the legislature to pass an act which necessarily abridged the right of the elector as fixed by the constitution. Admitting, as all the courts have, that the legislature may require registration of the elector as a prerequisite to his exercise of the right of voting, is there anything unreasonable in requiring the elector, who is such at the time, and resides in the election district, to see that his name is registered one, three or six days before the election is to take place? Does such requirement abridge the elective franchise any more, or even as much, under the present law, as the law which requires the voter to prove his right as an elector, not only by his own oath, but also by the oath of one or more freeholders or householders of the district in which he offers to vote? The thing necessary to be done in order to procure his name to be entered on the register, is not half so onerous

as that required to be done as a substitute for the registry in order to entitle the elector to vote.

The objection that on the days fixed for the registry the elector may be absent, sick or imprisoned, was fully answered by Chief Justice SHAW in his opinion above quoted. He says: "Nothing, therefore, but the carelessness or neglect of the voter himself, *or some accident not attributable to the law or the officers who are to execute it,* can deprive him of the power of proving his right and exercising his privilege; and against these it would be difficult, either by legal or constitutional provisions, entirely to guard." This answer seems to me to be a perfect one, and I shall not attempt to enlarge upon it.

The only cases which have been brought to our attention in which the power of the legislature to pass a registry law has been seriously questioned, since the decision in the case of *Capen v. Foster*, are *Page v. Allen*, 58 Pa. St., 338, and *Patterson v. Barlow*, 60 Pa. St., 54. In the first case the majority of the court held the law of Pennsylvania then under consideration void; but it will be seen, by an examination of the case, that the third judge who concurred in the majority opinion holding the law void, did so expressly on the ground that it was so framed as to necessarily deprive one class of electors of the right to vote. Chief Justice THOMPSON, who delivered the opinion of the court holding the act void, bases his opinion upon two grounds: *first,* that it is impossible to execute the law; and *second,* that the law necessarily deprived one class of electors of the right to vote; and in closing his opinion he says: "We do not mean at this moment to decide that no constitutional registration law can be enacted. For myself, I think there might be, and possibly in such form as to protect the rights of all legal voters, and secure the people, to some extent at least, against the possibility of fraud at the ballot-box." Justice STRONG, who concurred with the majority, says: "A registry law might be framed under our

constitution. Such a law is desirable. I see but one objection to the constitutionality of the act of 1868. It is that it deprives of a vote those who may move into an election district more than ten days prior to an election, but less than twenty. In this particular alone the act is unconstitutional."

The law under consideration in that case required, as construed by a majority of the court, that a person, in order to entitle himself to be registered, must prove that he had been a resident of the district ten days previous to the time he applied for registry. It also provided that the last day for registering should be ten days before the day of the election, whereas the constitution only required ten days' residence in the election district to entitle an elector to vote, if otherwise qualified. Justices AGNEW and READ, who dissented and held the law constitutional, gave such a construction to the act as to avoid the difficulty found by the majority. Justice AGNEW, who delivered the opinion of the majority of the court in the case of *Patterson v. Barlow*, meets the argument that it is the proper time to prove the right of the elector to vote, on the day of election and when he offers his vote, as follows: "Another ground, much urged, is, that the proper time for proof of the qualifications of electors is the day of the election; for then only, it is said, the period of residence is complete, and from the nature of the facts this cannot be shown before. Grant it; but this position is taken in mistake of the very law before us. By this law it is on that day — the day of election — the election board sits to receive the vote and the proof; then the elector appears before them and proves his franchise; then the evidence is produced and the decision made upon it. But what clause in the constitution forbids the means to be provided beforehand which furnishes evidence of the fact? What clause forbids the making up of a record ten days before, that shows that the person offering his vote to the board was an actual resident of the precinct ten days before, and was then set down as entitled to claim his privilege on the day of elec-

tion? Why is such a record not good evidence that his residence actually began in the district or preëxisted there ten days before the election? Certainly it does not diminish the true elector's right, but, on the contrary, tends to secure it. It is better evidence than the testimony of some irresponsible and base perjurer, brought to prove a false residence at some low boarding place. The record has the merit of truthfulness, and it relieves the true and honest elector of those unfounded and malicious objections to his vote made by partisans of either side. Here is the legal proof that his residence in the district began in the due constitutional time. What better proof can there well be of a residence complete on the day of election, than the personal appearance of the elector on that day, claiming his vote, with his ballot in one hand and the register in the other? It is good evidence; for the legal presumption arising from such proof is violent."

The argument above quoted was made to meet one accepted by the dissenting judges, viz.: that as under the constitution of the state a residence of ten days next before the day of election, in the precinct where the elector offered to vote, was necessary, and as the registry law required the registry to be completed eight days before the election, there could be no way of proving the right of the elector on the day of the registry. The objection by the dissenting judges was not that the registry beforehand tended to exclude the true electors, but that, being conclusive of the right to vote, as was assumed by them, many persons whose names were borne upon the register might vote at the election, who, by having removed from the precinct after their names were registered, were not entitled to under the constitution. It was also objected that the registry law excluded an elector from voting who became a qualified voter after the time for registering had passed, and that the law was void for that reason. Our law is not subject to this last objection, as all such cases are provided for and the right fully protected; and, under our law, there is

certainly no difficulty in making the proof necessary to entitle the elector to be registered. All he has to do is to prove that he is a citizen of the United States, or has declared his intention to become such; that he is twenty-one years old, and has resided in the state one year, and is then a resident of the election district. If, at the time the registry is required to be completed, he is not of age, or has not resided in the state one year, or is not a citizen of the United States, and has not then declared his intention to become such, in all such cases, if he becomes a qualified elector before or on the day of the election, his right to vote is protected by the law. None of the objections urged against the Pennsylvania law by the dissenting judges can be urged against our law; and there is nothing in their arguments which tends to show that they would not have sustained the law of this state now under consideration.

I think, as was said in the case last cited, that the conditions of a registry law are in the discretion of the legislature; that in the enactment of this law it exercised a sound and wise discretion; and, if we entertained the opinion that we could have exercised a wiser discretion in the matter, we have no power to set aside the act of the legislature for that reason. When the legislature has a discretion to exercise, courts can only set aside its action when there is a plain, palpable and clear abuse of such legislative discretion.

I have not examined the other question discussed on the argument, as the decision of the majority of the court places the reversal of the order appealed from on the grounds discussed, and not upon the question of the sufficiency of the title of the act.

In my judgment, the complaint in the action failed to state a cause of action, and the order sustaining the demurrer should be affirmed.

*By the Court.*— The order of the circuit court sustaining the demurrer is reversed, and the cause remanded to the circuit court for further proceedings according to law.