Atherton, J.
The grounds upon which the return is claimed to be insufficient, is that the law entitled “an act to provide for ascertaining the citizens who shall be entitled to vote in the cities of the first and second grades of the first class, by amending and supplementing section 2926. of the Revised Statutes,” 82 O. L., 232, is unconstitutional and void.
It is claimed that the provisions of that act are in violation of Ser. 1, Art. V, of the Constitution which provides: “ Ev.ery- while male citizen of the United States of the age of twenty one years, who shall have been a resideut of the State one year next preceding the election, and of the county, township, or ward in which he resides such time as may be provided by law, shall have the qualifi :ations of an elector, and be entitled to vote at all elections.”
In Pennsylvania, the Supreme Court held that a registry law was unconstitutional on the ground that it impaired the free exercise of the right of suffrage as conferred by the Constitution, and that “ no Constitutional qualifications of an elector can in the least be abridged, added to or altered by legislation, or the pretense of legislation.” Page vs. Allen, 58 Pa. St., 338.
And the Supreme Court of Wisconsin held: “That part of Sec. 8, Ch. 235, laws of 1879, which provides that no vote shall be received at any general election, unless the name of the person offering to vote be on the register completed by the board of registry as previously provided in said act, excepting only the case of persons who may have become qualified voters before such election, but after the completion of the register — is in violation of Sec. 1, Art. 3, of the State Constitution: which defines the qualifications of electors; and that provision being *144 an essential part of the act, without which it cannot be supposed that statute would have been enacted, the whole act is invalid.” Dells vs. Kennedy, 49 Wis., 555.
In these States, like ours, there was no constitutional provision requiring, or expressly authorizing, registration.
Registration laws are in terms either authorized or required to be enacted by the Constitutions of the following States : Alabama, Ar-
kansas, Florida, Georgia, Illinois, Kansas, Louisiana, Maryland, Michigan, Mississippi, Missouri, North Carolina, Rhode Island, South Carolina, Virginia and West Virginia. The Constitutions of the following States are silent on the question: California, Conneticut. Delaware, Iowa, Maine, Massachusetts, Minnesota, Nebraska, New Hampshire, New Jersey, Ohio, Pennsylvania, Tennessee, Texas and Vermont.
The question here presented is, whether in the absence of Constitutional provisions expressly authorizing it, the legislature can, by its general grant of legislative power and for the purpose of “ascertaining the citizens who shall be entitled to vote,” enact the registration laws.
The leading case upon this subject is admitted on all sides to be Capen vs. Foster, 12 Pick., 485, and, as will be seen by the foregoing list, was determined by the court of last resort of a State whose Constitution was silent on the subject of registration.
A s'a'u.te was enacted establishing the City of Boston, and in sec. 24 of the act it was provided that prior to every election it should be the duty of the city officers of that city to make a registration of voters, and that no person should be entitled to vote whose name was not found on the list. The Supreme Court held that the provisions of that act were not to be regarded as prescribing a qualification in addition to those, which by the Constitution, entitles a citizen to vote, but only a reasonable regulation of the mode of exercising the right of voting, which it was competent for the legislature to make.
So, in Wisconsin where the Constitution was also silent on the subject of registration laws, the Supreme Court held that, although the Constitution, sec. 1, Art. 3, prescribed the qualifications of electors and that a statute could not impair the right of those possessing them, they might require proof thereof, consistent with the right itself, and that the registry law of that State was valid so far as it provided for a register of qualified electors to be made in the manner therein prescribed, and constituted such register one mode of proof of the elector’s right, and so far also as it requires the elector whose name is not upon such register to make other reasonable proof of his right to the inspectors of the election at the time of offering his voce. State ex rel. Wood vs. Baker, 38 Wis., 71.
*145 So in Iowa it was held that while the right to vote by one possessing the qualifications of an elector as prescribed by the State Constitution, cannot either be destroyed or impaired by the legislature, yet that the legislature may regulate the exercise of the right by enacting provisions for determining the age, length of residence, etc., of persons offering to vote, and that the registry law of that State providing for the registration of voters was not in conflict with the Constitution prescribing the qualifications cf electors. Edmunds vs. Banbury, 28 Iowa, 267.
This court has adopted the doctrine laid down in the case of Capen vs. Foster, supra. Monroe vs. Collins, 17 Ohio. St., 666, 687.
Other decisions of the character might\>e cited; and we think the current of authority is opposed to the decisions in Page vs. Allen, and Dells vs. Kennedy, in so far as they may be understood to pronounce against the constitutionality of all registration laws; and that it is competent for the legislature, under the general powers of legislation granted to it by the Constitution, to provide for a general registration of voters and to make the fact of registry a condition to the exercise of the right of voting. The power being conceded, the legislature is supposed to know best the wants of the State in that regard, and it is not for the courts to question the wisdom of making such enactments.
Begistration is one of the modes in which purity in election may be attained, and every honest and qualified voter has an interest in securing the integrity of the ballot, and excluding the ballots of the dishonest and unqualified.
Every honest voter is as much injured by the reception of a fraudulent vote, as by the exclusion of his own, and it makes but little difference to him whether his vote is wrongfully excluded, or completely neutralized by the ballot of a person unqualified, Among the safeguards that we deem most efficacious to prevent fraud, insure integrity at the polls, and enable the honest and qualified elector to exert his just influence,'and control the result, is a wise system of registration; and we are satisfied that it is within the constitutional province of the legislature to enact a wise registration law. that without in any way abridging the rights of qualified electors, or adding any unlawful qualifications to the voter, may secure the purity of the election by a registry law so framed as to be a reasonable regulation of the mode of exercising a constitutional right.
. But it is claimed in the case at bar that, admitting the general right to enact a proper registration law, the act under consideration is unconstitutional, because it does not contain reasonable regulations as to the right to vote, hut imposes on the voter unreasonable and unnec *146 essary restrictions, and, “under the pretense and color of regulating,, subverts and injuriously restrains the right itself.”
In Capen vs. Foster, supra, the court,, after declaring the enactment of a registry law to be clearly within the just and constitutional limits of legislative power, as a reasonable and uniform regulation to secure and facilitate the right of votingjin a prompt, orderly and convenient manner, .yet say, that “such a construction would afford no warrant for such an exercise of legislative power as under the pretense and color of regulating, should subvert or injuriously restrain the right itself.”
The doctrine of this case is adopted bv our own'court in Monroe vs. Collins, 17 Ohio St., 666, and on page 685, Welch, J.. delivering the opinion of the court, says :
“ What the legislature can not do directly it can not indirectly. If it has no power expressly to deny or take away the right, it has none to define it away, or unreasonably to abridge or impede its enjoyment by laws professing to be remedial. The power of the legislature in such cases is limited to laws regulating the enjoyment of the right by facilitating its lawful exercise and by preventing its abuse. All reasonable latitude should be allowed to the legislature in the exercise of this power of regulation, and every reasonable intendment in favor of the constitutionality of laws enacted for that purpose should be made by the courts. Such- laws are not to be held unconstitutional unless clearly so, and'if they will atjall bear a construction which makes them consistent with the Constitution, they are to receive that construction and so to be upheld. The true line between laws which take away or abridge the right of suffrage, and those which may lawfully be enacted to regulate its exercise, is laid down by the Supreme Court of Massachusetts in Capen vs. Foster, 12 Pick , 488. It was there held, substantially, that laws of the latter description must be reasonable, uniform, and impartial and must be calculated to facilitate and secure rather than subvert or impede the exercise of the right to vote.” •
The Judge further says : “Still if the provision of this law is such as to afford the voter no opportunity to know seasonably whether his name is on the list or not, and to have it inserted if previously omitted-it would constitute a serious objection to its validity, and this is the question no-v presented for our deliberation.”
In discussing the legislative power to regulate the right of voting, the Supreme Court of Pennsylvania say :
“The right must not be impaired by the regulation ; it must be regu lation purely, not destruction ; if this were not an immutable principle, elements essential to the right itself might be invaded, frittered away or entirely exscinded under the name or pretense of regulation, and *147 thus would the natural order of things be subverted by making the principal subordinate to the accessory.” Page vs. Allen, supra.
The Supreme Court of Wisconsin, in discussing the registry law of that State, assert:
“The statute must be so construed as to reconcile all its provisions to the unimpared unincumbered right of suffrage at the election.” State ex rel. Wood vs. Baker, supra.
Judge Brewer, pronouncing the opinion of the Supreme Court of Kansas, declares:
“Doubtless, under the pretense of registration and under the pretext of securing evidence of voters, qualification laws might be framed which would cast so much burden as really to be imposing additional qualifications. As for instance, suppose the law required all voters in the State to be registered on personal attendance at the State Capitol on the first day of the year for every election taking'pkce within the year. The legislature cannot by in form legislating concerning rules of evidence, in fact overthrow constitmtional provisions.” State vs. Butts, 31 Kan., 554.
“No registry law can be sustained which prescribes qualifications ¡of an elector additional to those named in the Constitution, and a.registry law can be sustained only, if at all, as providing a reasonable mode or method by which the constitutional qualifications of an elector may be ascertained and determined, or as regulating reasonably the exercise of the constitutional right to vote at an election.” Dills vs. Kennedy et al., 49 Wis., 555.
The above declarations of courts of last resort might be multiplied, and indicate the true tests of the constitutionality of statutes relating to the subject of registration where the voter’s name.must bo found on the register to entitle him to vote. The legislature has full power to regulate the right to vote, but no constitutional power to restrain or abridge the right, or unnecessarily to impede its free exercise. Under the preten3e of regulation, the right of suffrage must be -left untrammelled by any provisions, or even rules of evidence, that may injuriously or necessarily impair it, and so the citizen cannot forfeit the right except by his own neglect, or by such peculiar accidents as are not attributable to the law: itself. So upon this part of the case, our conclusion is, that the legislature may enact registration laws, but they •must be for regulation only, and must not unnecessarily abridge or impair the right of suffrage secured to every elector by the Constitution.
With -that view we are to examine the provisions of the apt in question, and by the tests given it must stand or fall.
Sec. 2926 provides for constructing election precincts.
*148 Sec. 2926a provides for the appointment of registers.
Sec. 29266 provides that the registers shall attend at the usual places .for holding elections on the third Thursday preceding every general ■election; from 8 a. m. to 9 p. m. for the purpose of registering voters, and be in attendance there for a like purpose for five successive days.
Sec. 2926c provides the mode of recording the names.
Sec. 2926d. How registers are to prepare list? to be posted.
Sec. 2926c provides that registers shall be in attendance again on the Wednesday preceding a general election, for the purpose of revising and correcting the lists of voters, adding the names of those who will be ■ entitled to vote at the ensuing election, etc.
It will be seen by the above there are but seven days in the year when voters can register. These are the six days commencing on the third Thursday preceding the election, and the Wednesday preceding the election.
There is no provision for registering at pleasure during the earliei part of the year, and no provision for proving his qualifications on ■election day and voting, and by section 2926a it is declared that “ no vote shall be received at any election aforesaid, unless the name of the person -offering to vote be on the registry,” etc.
A voter who is the oldest inhabitant of the ward, and an elector in it for the greater part of his life-time, if from absence, however necessary or unintentional during the seven days, cannot vote if his name is not on the registry. Many absentees may get home io vote, and if they were afforded opportunities during the year, might also register, whose right of suffrage must necessarily be lost under the act. -
How many mechanics may be absent pursuing their trades during th eseven days. A large number of persons will be away on steamboat and other sailing craft, and elsewhere earning a support. A large numbers! students, a great many of the class usually termed commercial travelers, will be away, perhaps planning their trips to be home on election day. A large number of citizens in government employ, at Washington and elsewhere, will be at their posts of duty, and may return to vote, but would hardly have the opportunity to return on a different da.y to register. Even the members of this court might be unable to register without a decided detriment to-the public business, and might be compelled to elect between the neglect of important official duties and the .loss of suffrage.
Is it a proper regulation of the constitutional right and privilege to say that the right shall be lo3t unless the elector appears in person during these seven' days to’register ? Is it reasonable to say that all these persons cannot register either before or after the seven days; that *149 they cannot make application for registration in writing, upon oath, however well known, but must appear at these arbitrary times in person or lose their rights ? As to this largo class of persons necessarily absent during the time allotted for registration by the act, is this reasonable regulation, or is it an abridgement and impairment of the right to vote under the guise of regulation ?
What the legislatures have deemed reasonable regulation elsewhere, may be learned by reference to the provisions of the registration laws of other States, especially when these acts have been upheld by the courts.
The Massachusetts registration statute, construed and favorably considered in Capen vs. Foster, supra, required lists to be made of all electors, of each ward, qualified to vote, and that no person should be entitled to vote whose name was not borne on the list. But it was specially required that the selectmen and assessors should be in session immediately before, or on the day of election, so as to give the voter an opportunity to then place his name on the lists, if it had been omitted.
The Pennsylvania registry law provided that the assessors on the first Monday of June, annually, should revise the transcripts received by the County' Commissioners, and strike off those who have died or removed, and add to the list any one entitled. Copies of these lists are to be posted up where the elections are to be held by August 1st, and that an unregistered voter, otherwise qualified, could on election day-make an affidavit of his qualifications, and prove- by the affidavit of a -qualified voter his residence, and by filing the same, could vote at the election. In re Election of McDonough, 105 Pa. St., 490.
The registry' law of Iowa prohibited all persons from voting unless the name appeared upon the registration list, but an elector unregistered but otherwise qualified, was permitted to vote, upon a proper reason being furnished for not having registered in time, and furnishing the affidavit of a registered voter as to his proper residence. Edmonds vs. Branbury, 28 Ia., 267.
The registry law of California though piohibiting a citizen from voting whose name did not appear on the registry, yet permitted a qualified voter though unregistered, on furnishing proofs of his right and on the day of election, furnishing the board of registration his affidavit setting forth satisfactory reasons why he did not register prior to the thirty days provided by law for registration before the election. People vs. Laine, 33 Cal,, 55; Webster vs. Byrnes, 34 Cal., 273.
The election law of New York of 1865, provides that the board of registry shall be in session on the Monday before the. election for the purpose of making corrections in and revising the lists of voters, and *150 the act of 1872 provides the registry shall be completed on the Saturday before the election, but. neither of these acts have been subjected to judicial tests as to their constitutional validity.
The election laws of Illinois prohibits the ballot of unregistered voters, except that it allows such voters, on making proof of their constitutional qualifications on election day, to vote without even requiring proof of a reason for not rejecting. Byler vs. Asher, 47 Ill., 101.
The election law of Kansas provides for closing the registry ten days before the election, but permits the voter to register at all times during the year except the last ten days. State vs. Butts, 31 Kan., 537.
The registry act of Missouri requires the registration of voters to be completed ten days before the election, but the same simply follows the requirements'of the Constitution of that State.
In the State of Maine the selectmen are required to make lists of voters, and in towns of over 500 electors, the names of legal voters may be added during the three days next preceding the election, and to the hour of five of the secular day prior to the election, and in towns of less population, the selectmen must be in session on the day of election for the purpose aforesaid. Rev. Stat. of Me., 95.
In New Jersey, in cities of over 100,000 population, no person is permitted to vote unless registered, but his name may be placed on the registration list, upon the personal appearance of the elector before the-board, or upon the preduction of his affidavit, or the affidavit of some-other voter in the precinct, showing him to be a legal voter therein. Rev'. Stat. N. J., 364, §152.
In Maryland a list is to be made of all legal voters by registration-officers, and such lists are therefore to be corrected, but the lists so made-are declared to be the legal and qualified electors and entitled to vote at all future elections, and annual registration is not required. The statute provides, however, for making additions to and corrections of the-lists to within three days of the election. Supplement to Maryland-Code, 240 et seq. .
In Alabama registration is required as a condition to vote, but the assistant registers are required to be present on election day, at the election precinct, to register such voters as may have failed to register on any previous day. Code of Alabama, 23, §233.
In Mississippi registration is required, and the registration lists are to be kept by the Clerk of the Circuit Court, “And any person not on the lists may appear at any time before the clerk and be registered.,T Code of Mississippi.
The Code of Arkansas provides for registration, but if the voter’s name does not appear on the lists, he may still vote by taking an oath *151 showing to the satisfaction of the election judges, that he is a qualified voter. Arkansas Stat., 471, §2328.
Whe have been unable to find any case where a registration act has been upheld as constitutional which contained provisions similar to our statute. The necessary absence of a voter, on the seven days provided in the statute for registration, either by sickness, business, imprisonment or other lawful reason, absolutely forfeits, for the timé being, his constitutional right of suffrage.
He cannot anticipate expected absence, and register at an earlier period. He cannot prove his right by .his affidavit or the affidavit of others, and excuse his personal presence at the place of registration. He cannot, on the day of election, or within five days prior thereto, by any proof of constitutional qualification supply the want of former registration. A foreigner, who has taken out his first papers, and made his necessary declaration to become a citizen, and whose right to full ■citizenship and the elective franchise will ripen during the five days before, or on the day of election, cannot secure registration or the right to vote, because he cannot prove in advance that the action of the court will naturalize him.
We have deeply felt the gravity of the question here presented, and the importance to every citizen of its correct determination, and had hoped to find the provisions of the statute of such a nature that they might be upheld. We believe it an easy task so to frame a registry •law, that while protecting the election from fraudulent votes, and securing the integrity of the ballot, it will in no .practical way impede or injuriously restrain the constitutional right of the voter, but in the language of Welch, J., in 17 O. S. the law must be reasonable, uniform, impartial,, and calculated to facilitate and secure, rather than to subvert or impede, the exercise of the right to vote. Believing the act in question unnecessarily, unreasonably and.injuriously to impair and impede ■the right of suffrage to the voter who is necessarily absent at the time fixed by the act for registration, we are unanimously of the opinion that we are compelled to declare it to be subversive of constitutional right, and therefore void.
2. It has been suggested that while the act may be unconstitutional and void as to the voter necessarily absent, it might be upheld generally and as to' all other classes of voters.
That question we think, however, has been determined otherwise by this court.
It has been held that an ordinance of a municipal corporation, prohibiting, under a penalty, the opening of a store or shop for business on Sunday, without exempting persons who anomaly observe the sev *152 enth day of the week, was opposed to the policy of the State law, and void, and that a person may avoid it without showing that he belonged to the excepted class. City of Cantion vs. Nist, 9 Ohio St, 439 ; Thompson vs. Mt. Vernon, 11 Ohio, St. 688.
“Although a statute may be unsconstitutional in part and constitutional in part, yet where only one object is aimed at and the same is-unconstitutional, and all the provisions are contributory to it, and would not have been enacted but for the main object, the whole statute is void. Darby vs. City of Wilmington, 76 N. C., 133. The State vs. Sinks 42 Ohio St. 345. The State vs. Perry County, 5 Ohio, Stat. 498.
This act is therefore unconstitutional and void as to all classes. It has been strenuously and ably argued in this case that the act in question, relating as it does to the regulation of the right of the citizen to vote, is'of a general nature, and must, therefore, under the constitution, have a uniform operation throughout the State under that clause requiring all acts of a general nature to have such uniform operation.
But the conclusions we have arrived at are conclusive of the case,, and upon this and other questions raised in the argument we prefer to-express no opinion now. The petitioner is ordered to be discharged from custody, and to recover his costs.— Ohio Weekly Law Bulletin.