## People ex. rel Foley v. Augustus Kopplekom.

Where votes were cast at an election, by legal voters, but who had not been regis-
tered, for the reason that there was no acting board of registration: *Held*,
that the statute requiring registration, being grounded upon the same
article of the constitution which gives the right to vote, is imperative, and must
be complied with before the elector can vote; and that the omission by the board
of registration to meet, is of no avail to the elector. — *Const. Art.* VII, § 6.

*Heard January 9. Decided January 13.*

*Quo Warranto.*

The information in this cause was filed to test the right
to the office of Sheriff, for Houghton county.

An issue of fact having been joined, the cause was re-
ferred to the Houghton Circuit for trial.

The cause was tried without a jury.

The court below found that the defendant was not
guilty of intruding into the said office. No exceptions were
taken in the court below.

The report of the circuit judge being now before the
court, the defendant moved for judgment.

*A. W. Buel*, for respondent.

1. The Registration Law is constitutional.

The general purpose of the law, as expressed by its title,
and clearly indicated by its provisions, is " to preserve the
purity of elections, and guard against the abuses of the
elective franchise by a registration of electors," and the pro-
visions are clearly promotive of those purposes.

The constitution simply gives the right of the elective
franchise and prescribes the qualifications of voters; but
leaves the mode and manner of exercising the right open to
regulation by the Legislature, and for this purpose it is,
and ever has been, a fruitful subject for changing legisla-
tion. — 12 *Pick.* 485.

Where the constitution has established a political right
or privilege, but has not particularly designated the manner

of its exercise, it is within the constitutional limits of the legislative power to provide such reasonable and uniform rules in regard to its exercise, as may be necessary to secure and protect the right or privilege thus established, and regulate the manner of its exercise. — 12 *Mass.* 485; 44 *N. H.* 398.

It may be objected that a qualified voter, or all the qualified voters of a town, might lose their votes for the want of a register, from accident, ignorance, mistake, neglect, or fraud.

To this we answer:

*a.* No law ever does or can perfectly provide against possible failure of execution, from one or more of the causes suggested by the objection.

*b.* The constitutionality of a law can never depend upon its execution or non-execution, in fact.

*c.* To lose the right of voting from such causes, is not to be disfranchised by the law; but is a result produced in opposition to, or in defiance of, the intent and provisions of the law.

2. The law being constitutional, its vital provisions now in question are mandatory, viz: .

*a.* There shall be " a register for every town, city and village."

*b.* The register shall be "in the hands of the inspectors of election, to be used by them during the election."

*c.* The Inspectors "shall not receive the vote of any person whose name is not written in the register."

Chief Justice *Shaw* speaks of similar provisions in the Massachusetts statute, as being "only a reasonable regulation of the mode of exercising the right of voting, which it may be competent to the legislature to make valid and binding, and to which both voter and presiding officers at elections are authorized and bound to conform."

It follows that if there be no register in existence, or if the election be conducted without a register in the hands of

the inspectors, to be used by them at the polls during the election, then in either case the votes received are received illegally, and in the face of an express prohibition of the statute, and to be rejected in a judicial canvass.

Such being the case here, the entire vote of Franklin township should be rejected as illegal and invalid, and judgment be rendered for the respondent.

*Wm. L. Stoughton,* Attorney General, and *Moore & Griffin,* for People.

The constitution declares and defines the qualifications of voters, leaving to the legislature the right to pass laws to preserve the purity of elections, and guard against abuses of the elective franchise.— *Const. Art. VII,* §§ 1 - 6.

2. In the exercise of this power, the Legislature cannot add new qualifications. They cannot restrict nor enlarge the conditions of suffrage, nor the qualifications of the electors. 5 *Wis.* 316; 9 *Id.* 283; 13 *Mich.* 127.

3. The registry acts of this state can be sustained as constitutionally valid, only on the ground that they are intended and adopted only to guard against abuses of the elective franchise.

They do not create nor enlarge the right to vote, and they cannot limit or destroy it, unless they provide the means for the voter to act in compliance with them, and so to secure the enjoyment and exercise of his constitutional rights.

The legislature may prescribe the mode of trying the right to vote, and regulate the evidence of such right; but this is as far as they can go.

4. This, in fact, is the scope of the registry law. The right to vote results from the constitution. The registry is but a means of preventing fraud, by requiring all voters, who are such under the constitution, to enrol their names before designated officers.— 3 *Allen;* 1.

5. It appears in this case that there was no registration of voters, and no opportunity to the electors to register their names.

There was no meeting of the board at all after 1864, and no opportunity to register on the day of the election.

The court below properly decided that there was no legal register in existence.

In connection with these are the facts, that an election was held; that the electors of Franklin did vote; that they were legal voters but for registration; and that they had no opportunity to register.

We claim that this was a good election under the constitution, and that the rights of the voters, as secured by the constitution, cannot be abrogated by the neglect of the officers to comply with the directions of the Registry act.

*a.* To validly disfranchise a voter, he must himself have been in fault, in not complying with the reasonable requirements of the statutes.

The regulation must be reasonable in itself, and he must have an opportunity of compliance.

The principal authority on the validity of this class of acts, is that of *Capen v. Foster,* 12 *Pick.* 485.

Now, this case requires the adoption of reasonable and uniform regulations, and not such as "should subvert or injuriously restrain the right itself."

The law, then, would be invalid, if it did not give the voter the opportunity to register.

*b.* We contend that the same consequences would follow if the officers designated by the law did not afford the opportunity to the voter to register.

If, in such cases, the legal voters actually came forward and deposited their ballots, the default of the officers to comply with the directions of the statute, does not invalidate the result any more than their default in other cases in complying with positive directions.

Ministerial officers cannot, by their wilful omissions, destroy rights of this character, vested under the constitution, when there is no default on the part of the voter.

GRAVES J.

It appears from the finding in this case that there has never been any valid or complete registration of voters, or any legal board of registration in the township of Franklin in the county of Houghton, since the organization of the township in 1864; and that at the general election, on the 6th of November, 1866, in the several townships of said county, whereat the relator and respondent were respectively voted for, for the office of Sheriff, a large number of electors, in said township of Franklin, without having been registered, for the reason that there was no acting board of registration, did nevertheless actually vote for the relator; and that the votes thus given, if allowed to him, would secure to him a majority, and if disallowed, would leave him in a minority. The question, and the only question presented, therefore, for our consideration is, whether the votes thus given for the relator, were legally cast.

It is *admitted* that the act for the registration of voters is *valid ;* but it is argued that no one, otherwise qualified, can be deprived of his vote for being unregistered, when the officers designated to administer the act, fail for any cause to *provide* a registry.

The essence of the argument is, that the right to vote results from the Constitution, and that every provision of this act to preserve the purity of elections, which requires electors to be registered, and prohibits all voting without it, is always to be considered as subject to the tacit exception that the means for registration, in accordance with the act, are certainly provided.

It is not to be disguised that this reasoning has considerable strength, but it has failed, however, to satisfy us.

The statute in question is grounded upon the same article of the Constitution which gives the right to vote, and its object, as expressly declared in the title is, "*further* to preserve the purity of elections, and guard against the abuses of the elective franchise, by *a registration of electors.*"

In accordance with this declared object, the act proceeds to provide for the organization of boards of registration, and to require the electors to register, *and expressly forbids all voting by persons not registered.* The administration of the statute is confided to the local officers elected by the people themselves, for the discharge of other municipal duties, and who may be compelled by law to act. It contemplates general obedience and continuous administration, and nowhere, in terms, makes any provision for its own nullification, either through violence, or the negligent or willful failure of officers to organize or preserve boards. It does not speak the language of a mere offer, or proposition to the electors, to register or not, but utters the language of law; *unconditional, absolute, imperative;* and declares, *that all who do not register shall not vote.*

If the legislature had *expressly* declared that no one should be deprived of his vote for not registering whenever the means of registration should be unprovided, the statute must have been regarded as equivalent to a legislative proposition to the electors to register or not, as they should see fit; and the introduction of the same idea, by construction, would produce the same result.

That interpretation, then, which to make valid the votes of electors, where there has been no registration, would make the act subject to an unexpressed condition, by means of which it could, at any time, be practically extinguished in whole townships, is manifestly opposed to the language and apparent scope, spirit and purpose of the law.

Rejecting then, as we must, this interpretation, we find that those votes upon which the relator has based his claim, were given and received in plain violation of law, and were consequently void. Judgment must therefore be entered for the respondent, with the costs of both courts.

The other justices concurred.