EDMONDS v. BANBURY *et al.*

28    267
138    737
138    738

1. Registry law: CONSTITUTIONALITY THEREOF. While the right to vote by one possessing the qualifications of an elector, as prescribed by the State Constitution, (art. 2 § 1), cannot be destroyed or impaired by the legislature, it may, nevertheless, regulate the exercise thereof, by enacting reasonable provisions for determining the age, length of residence, etc., of the persons offering to vote.

2. —— Section 8 of the act known as the " Registry Law " (Laws of 1868, ch. 171), providing for the registering of voters, is not in conflict with the provision of the Constitution above referred to, prescribing the qualifications of electors.

*Appeal from General Term, Eighth District (Johnson County).*

TUESDAY, OCTOBER, 26.

THE plaintiff brings this action against the defendants, who were the judges of a certain election described in the petition, and claims damages against them for maliciously and willfully refusing to receive his ballot or allow him to vote. Answer in denial.

The cause was submitted on the following agreed statement of facts :

It is agreed and stipulated in this cause now pending in the District Court of Johnson county, Iowa, that the following are the facts upon which the cause is to be tried, and the judgment rendered, to wit : that Iowa City in said county is a city of the second class under the provisions of chapter 51 of the Revision and amendments thereto, and has been such for several years last past, and as such city is divided into four wards.

That on the first Monday of March, 1869, an election, as authorized by law, was held in each and all of said wards

for the election of mayor, treasurer, marshal and assessor for said city, and for the election of a trustee in each ward; that at and for said election in the fourth ward of said city, defendants were the duly constituted and acting judges of election. That plaintiff is a white male citizen of the United States by birth, over thirty years of age, and is, and has been for several years last past, a resident of said State of Iowa, and of said fourth ward, and a voter therein; all of which was well known to said defendants on said election day when they refused his vote. That on said election day while the polls were still open, and judges waiting to receive votes (about two o'clock P. M.), plaintiff presented himself at said polls and offered his ballot to said judges, and offered to vote at said election, which the defendants refused; thereupon plaintiff offered to take the oath of qualification as such voter as specified in section 494 of the Revision of 1860, and demanded the privilege of voting, which the defendants refused, unless plaintiff would furnish to defendants his affidavit, showing a proper reason for not appearing before the board of registry as provided in section 8 in chapter 171 of the acts of the 12th general assembly of the State of Iowa, which plaintiff failed to do, protesting that he was not obliged so to do, and that under the Constitution and laws he was fully entitled to vote without such conditions, and that the latter part of said section 8 commencing with the words: "no vote shall be received," was unconstitutional and null, and again demanded the privilege of voting, which defendants refused. The name of plaintiff not being on the register as provided by said statute, he was not permitted to vote at said election, although, except for such omission of his name from the register, defendants knew plaintiff to be a qualified voter.

It is further stipulated and agreed, that if said court shall adjudge and decide that that part of section 8 aforesaid, of said chapter 171 (entitled an act for the registry of electors, and to prevent fraudulent voting), commencing with said

words "no vote shall be received," down to and including the words "to be entered on the register," in said section 8, is unconstitutional and void; or that a citizen of Iowa, whose name is not on the register, but otherwise duly qualified to vote, is entitled to vote at elections authorized by law, without showing a reason for not appearing before the board of registry in compliance with the provisions of said section 8, then judgment shall be given in this cause for the plaintiff, and against defendants, for the sum of ten dollars and the costs of this suit, otherwise the judgment shall be for defendants, and against plaintiff for costs. Each party reserves the right to appeal from the judgment rendered herein, to the General Term and Supreme Court.

Dated May 6th, 1869.

JAMES B. EDMONDS, *Plaintiff*,

L. P. FROST, *Attorney for Defendant.*

On the 8th day of April, 1868, the legislature of the State of Iowa (Laws 1868, ch. 171, p. 242), passed an act known as the "Registry Law." It is entitled "An act for the registry of electors, and to prevent fraudulent voting."

It provides that the township assessors shall annually make a record of "every resident voter in the township, who is or may become a qualified elector. previous to the next general election." It provides for a board of registry, fixes the time and place of its meeting; and requires that a list of all qualified electors shall be made, which shall be called the register of elections. It also provides for the revision, correction and completion of the register, and fixes a time and place when the board shall meet for this purpose, of which they are required to give a prescribed notice, and it is enacted that the register book shall at all times be open, without charge, to public inspection, at the office of the township clerk.

Edmonds v. Banbury.

Section 8, on which the question made in the case at bar arises, is in these words:

"SEC. 8. It shall be the duty of judges of elections to designate one of their number to check the name of every person voting, whose name is on the register. No vote shall be received, at any general or special election hereafter held in this State, from any person whose name does not appear on the register, unless the person offering to vote shall furnish the judges of election his affidavit, showing that he is a qualified elector, and a proper reason for not appearing before said board on the day for correcting said register, and prove by the affidavit of a person whose name is on said register, that he knows such person to be a resident of such township, and, if in a city or incorporated village, giving the place of residence in the manner required to be entered on the register, which said affidavits shall be filed in the office of the township clerk."

Then follow penal provisions against knowingly and wrongfully registering, and against fraudulently personating a registered voter, etc.

The District Court decided against the plaintiff, and its judgment was affirmed by the General Term.

Plaintiff appeals.

*Edmonds & Ransom* for the plaintiff.

No argument on file for defendants.

DILLON, Ch. J. — Respecting the "right of suffrage," the constitution of this State (art. 2, § 1) contains this

REGISTRY LAW: provision: "Every white male citizen of the
constitutional-
ity thereof. United States, of the age of twenty-one years, who shall have been a resident of this state for six months next preceding the election, and of the county in which he claims his vote sixty days, shall be entitled to vote at all elections which are now or hereafter may be authorized by law."

This section of the Constitution defines who shall be an elector. Our system of government is based upon the popular will. This will declares itself at the ballot-box. The propriety of having the organic law determine who may vote is manifest and indisputable. This is done by the section of the Constitution just quoted. It fixes the minimum age of voters, and the minimum length of residence. The legislature cannot change these particulars, nor any others which are specified in the Constitution. They cannot say that all voters shall be twenty-five years of age, or that they shall have been residents of the State for one year instead of six months. Unless protected by the Constitution, this might be done, and if this might be done, then there would be no certainty that the qualifications of electors would not be constantly changed.

In these suggestions we perceive the primary purpose of the aforementioned section of the Constitution.

Whoever possesses the qualifications there mentioned is an elector; and his right to vote, being thus given and secured by the Constitution, is a right of which it is not within the power of the legislature to deprive or divest him.

It is admitted that these qualifications confer a right. The right thus conferred is the right to vote. This right is held by a constitutional and not by a legislative tenure. It cannot be destroyed or impaired by the legislature. So far all is clear.

And it is equally clear to our minds that the legislature may regulate the exercise of this right, leaving the right itself untouched. They may, for example, make reasonable provisions for determining the age, length of residence, etc., of persons who offer to vote.

Every citizen who is entitled to vote is interested in having excluded from the box the ballots of those not

entitled.   To prevent fraudulent voting, to insure the purity of the ballot-box, are objects which fall properly within the province of legislative power and duty.

We thus see the boundaries of legislative power. Those whom the Constitution declares to be electors cannot be disfranchised; and not one jot or tittle can lawfully be added to or taken from the qualifications which the Constitution prescribes.

But the legislature, while it must leave the constitutional qualifications intact, and cannot add new ones, may, nevertheless, prescribe regulations to determine whether a given person who proposes to vote possesses the required qualifications; and these regulations are valid, provided they do not amount to a denial or invasion of the right conferred by the Constitution.   *State* v. *Lean*, 9 Wis. 279.

To insure the integrity of the ballot-box, the legislature has determined that a registry law is expedient.

The legislature is supposed best to know the situation and wants of the State, and whether there is a necessity for laws of a particular character; and when such laws do not invade the constitutional rights of the citizen; this court cannot sit in judgment upon the wisdom of the general assembly, but must respect, obey and carry out the legislative will.

The act in question professes to be one intended to prevent fraudulent voting; and the court sees no reason to believe that the professed purpose is not the true purpose.   It aims to secure this end by requiring a registry of voters.   It provides for notice, and fixes a time and place in which the registry may be made or revised.   It gives every voter an opportunity to have his name placed on the register.   There is a board of registry for each township, and for each town or city.   Thus the convenience of the citizen is consulted; and we have not the extreme case put by counsel in argument, that, if this act

is valid, then it is competent for the legislature to require all voters in the State to go to the capital, or some remote place, to get registered. I am not, however, prepared to admit that the validity of such a supposed law is by any means a logical or proper deduction from a decision upholding the present enactment.

Registry law or laws, providing that a list of voters shall previously be made, are not unusual. *Auld* v. *Walton*, 12 La. Ann. 129 : *Harris* v. *Whitcomb*, 4 Gray, 433 ; *Huggitt* v. *Lewis*, 28 Eng. L. & Eq. 326. And the main object of them is to prevent fraudulent voting. Whether such laws are wisely adapted to effect this end, and do more good than harm, is, as above remarked, a matter solely for legislative wisdom to decide.

No decision has been cited holding that such laws are unconstitutional, and those referred to by counsel are entirely consistent with the validity of laws of this character.

Guided by the principles before set forth, it is the opinion of this court, that the portion of the registry law upon which the plaintiff relies is not in conflict with the Constitution. The judgment appealed from must, therefore, be

Affirmed.