State, ex rel. Eble, v. Leavitt.

---

STATE, EX REL. CHARLES EBLE, V. WILLIAM LEAVITT ET AL.

[FILED OCTOBER 23, 1891.]

1. **Elections:** REGISTRATION. The city of N. is a city of the second class having more than 2,500 inhabitants, and is divided into four wards. The city is within N. precinct, which is six miles square and contains, outside of the city, about 300 voters. The county board has organized the territory above described, into a voting precinct, the votes to be cast in the city of N. *Held*, That the powers of a board of registration of the city of N. did not authorize such board to register any voter outside of the city limits.

2. ———: POLLING PLACES. That every legal voter of the precinct is entitled to vote at the place provided for that purpose by the county board, although such place may be within the limits of a city of the second class; and where there is more than one voting place in such city, he may vote at any one of them.

3. ———: ———: COUNTY BOARD MUST PROVIDE. It is the duty of the county board to provide a suitable number of polling places to accommodate the voters of the county, and no doubt the board may be compelled, in a proper proceeding, to provide proper facilities.

ORIGINAL application for *mandamus*.

*Geo. H. Hastings, Attorney General,* for relator.

*Barnes & Tyler, contra.*

No briefs filed.

MAXWELL, J.

The relator alleges in his petition that "he is a *bona fide* resident of the state of Nebraska, and has been for more than twenty years last past; that he is a citizen of the United States and a duly and legally qualified elector of the state of Nebraska; that he has resided in the county of Madison, and that portion of said county known and called Norfolk precinct; that he has so resided therein for more than ten years last past, and is entitled to the privilege of casting his vote at the coming general election to be held in this state on the 3d day of November, A. D. 1891.

"II. That the city of Norfolk, which is situated within the boundaries of said Norfolk precinct, as aforesaid, is a city of the second class having more than 2,500 inhabitants; that it is duly organized as such, and is exercising all the rights, duties, privileges, and franchises of such city; that the said city is situated within the boundaries of Norfolk precinct, which said precinct comprises a large amount of territory lying outside of the city limits of said city, and which said territory has residing therein and in the said precinct a large number of legal voters and electors, to-wit, more than 300 in number, who reside outside of the city limits of the said city; that said Norfolk precinct is one of the voting precincts of said county of Madison, duly established by the board of county commissioners thereof; that it comprises a portion of said county six miles square, and that the said city of Norfolk, above

mentioned, is situated within the said territory and comprises only a small portion thereof, and but a small portion of the said territory lies within the incorporate limits of the said city.

"III. That the said city of Norfolk is divided into wards and voting precincts, as provided by law, to-wit, the First, Second, Third, and Fourth wards, and that the defendants, William Leavitt, H. W. Winter, and A. H. Keisan, are the duly appointed, qualified, and acting board of registration for the first ward of said city of Norfolk; that E. G. Heilman, L. M. Gaylord, and W. F. Ahlman are the duly appointed, qualified, and acting board of registration in and for the Second ward in the said city; that August Satler, George Conevon, and C. G. Miller are the duly appointed, qualified, and acting board of registration in and for the Third ward in said city; that E. G. Hyde, G. W. Beymer, and P. H. Nelson are the duly appointed, qualified, and acting board of registration in and for the Fourth ward in said city of Norfolk, aforesaid.

"IV. That on Wednesday, the 14th day of September, 1891, your relator, who resides outside of the incorporate limits of the said city of Norfolk, duly presented himself to each of the several boards of registration above named, and asked and demanded of the said boards and each of them, that he be registered as a legal voter to the end that he might be entitled to cast his vote at the coming general election above mentioned; that each of the said several boards of registration, and all of them, refused to register your relator as a legal voter in said city of Norfolk, and still refuses so to do; that the reason assigned for such refusal by each of the several boards of registration is, that your relator is not a resident of the city of Norfolk, and has not resided within any of the said wards or within the incorporate limits of the said city, and is therefore not entitled to register or cast his vote in the said city, at the said election; that it is claimed on the part of the

said boards, and each of them, that the persons residing outside of the incorporate limits of the city of Norfolk, and within the precinct, as above stated, of which your relator is one, are not entitled to vote within the said city, or in any of the wards thereof, but that a separate polling place should be established outside of the incorporate limits of the said city, where your relator and all other legal electors of the said Norfolk precinct so residing outside of the said city limits, should cast their votes; and that said persons, including your relator, are not required to register before voting, and are not entitled to be registered for that purpose.

"V. That the common council of the said city of Norfolk has never, in any manner, divided the territory lying outside of the incorporate limits of said city and within said Norfolk precinct as aforesaid, into wards or voting districts or precincts, and has not attached the same to any ward or wards within the said city; that the board of commisioners of said county has not established a polling place in said precinct outside of said city limits, but offer to do so if they have the right and authority so to do; that your relator desires to be registered as a legal voter so that he may cast his vote at the coming election; that he, in good faith, applied to the said boards of registration for that purpose, and that they wrongfully and unlawfully refused to register your relator and to permit him to be registered in any of the several wards of the said city, and that unless compelled so to do by a writ of *mandamus* of this court, your relator will be deprived of his privilege of casting his vote at said election, and that he has no adequate remedy at law in the premises.

" Wherefore your relator prays for a peremptory writ of *mandamus* directed to the respondents herein, commanding them to forthwith register the relator as a legal voter in the manner as provided by law."

The defendants demur to the petition and the cause is submitted on the demurrer.

. State, ex rel. Eble, v. Leavitt.

Sec. 1, ch. 76, Comp. Stats., provides: "It shall be the duty of the mayor and council of any metropolitan city or city of the first class, or city of the second class having over 2,500 inhabitants, which shall include all portions of the voting precinct in which said city is situated, to cause to be prepared books for the registration of names and facts required by this act. Said books to be known by the general name of registers, and to be so arranged as to admit of the entering, under the name of each street or avenue in each election precinct, and the number of each dwelling on any such street or avenue, if there be a number thereto, and if there be no number, then under such definite description of the location of the dwelling place as shall enable it to be readily ascertained and found, the names of all legal voters in each dwelling in each of said precincts, who shall apply for registration. Such register shall be ruled in parallel columns, in which, opposite the name of every applicant for registration, shall be entered the words and figures hereinafter provided in this act, and shall be of such size as to contain not less than 800 names, and so prepared that they may be used at each election in any city governed by the provisions of this act, until such time as in this act providing for the succeeding general registration, and shall on the inside be in form as follows, to-wit:

| Residence. | Room No. | Address. | Sworn. | Nativity. | Color. | Term of Residence. | | | | Court. | Qualified voter. | Date of application. | Why disqualified. | Date of erasing name. | Voted November. | Month voted. | Challenged. | Remarks." |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | | | | | | Precinct. | County. | State. | Naturalized. | Date of papers. | | | | | | | | |

It will be seen that the power of the board of registration is confined to voters residing within the city. The provision in the statute that the district "shall include *all* portions of the voting precinct in which said city is situ-

22

ated," does not extend the powers of the board so as to include voters residing beyond the limits of the city. It is designed to prevent any portion of the city from being omitted; in other words, the registration district shall include the whole city so that no voter shall be omitted.

Sec. 60, chap. 18, provides: "Each board of county commissioners shall divide the county into convenient precincts, and as occasion may require, erect new ones, subdivide precincts already established, and alter precinct lines. And whenever any portion of territory containing in the aggregate not less than one township of land, and not more than four townships lying contiguous, shall contain not less than fifteen voters, it shall be the duty of the county commissioners, on receipt of a petition signed by a majority of the legal voters therein, to constitute such portion of the territory a voting precinct."

Chap. 14, art. 2, sec. 9, provides: "Precinct lines in that part of any county not under township organization, embraced within the corporate limits of a city of the second class, shall correspond with the ward lines in such city, and such precinct shall correspond in number with the wards of the city, and be co-extensive with the same; *Provided,* That when a ward is divided into two election districts, the precincts corresponding with such ward shall be divided so as to correspond with the election districts; *And provided further,* That no justices of the peace or constables shall be elected in such precinct, and every such city shall constitute a district for the election of justices of the peace and constables, and in every such district there shall be elected two justices of the peace and two constables at the time provided by law for the election of such officers in other districts."

The division of a county into suitable voting precincts is devolved upon the county board of a county. It is presumed that that body will do its duty and provide a sufficient number to accommodate the voters. The voter

necessarily must vote at such place in his precinct as the county board shall provide. This may not be the best or most accessible place for that purpose, but nevertheless he must vote at the place provided or not vote at that election. The county board, however, must provide a polling place in each precinct where all the voters therein may be accommodated. The board cannot disfranchise any voters by refusing or neglecting to create a polling place in any precinct.

A republican form of government can only be maintained by the untrammelled exercise of the elective franchise and counting the ballots cast, and carrying into effect the will of the electors as declared through the ballot box. The powers of a board of registration of a city extend only to residents of the city embraced in the election district for which the board is sitting. Such boards have no authority, therefore, to register a voter residing without the limits of the city, although within the voting precinct as established by the county board. The object of registration is to prevent fraud in elections—not to prevent legal voters from casting their ballots. Experience has shown that election frauds, particularly in the colonization of alleged voters, is confined almost exclusively to the cities and larger towns, where from the nature of the case it is generally impossible, by reason of the great number of strangers, to distinguish those entitled to vote from those not so entitled. In the country and small towns, however, where nearly every voter is acquainted with every other voter in the precinct, with the right of challenge of any one of whom there is any doubt, there is sufficient protection against illegal voting; and therefore the requirement of registration which originally applied to the entire state is now limited to cities containing not less than 2,500 inhabitants. It would seem best to limit the election precinct to such territory as was embraced in an election district, but that is a matter for the consideration of the county board. No

doubt any elector who is in danger of being deprived of the right to vote by reason of the want of sufficient accommodations may compel the board to create a sufficient number of polling places to accommodate all who may desire to vote, but the form of such districts necessarily must, to a great extent, be left to the county board. Any legal voter of Norfolk precinct, therefore, has a right to vote at the place in the precinct designated by the county board, and as such place is within the city of Norfolk, which has four wards and four polling places, it follows that such voters may cast their votes at any one of such places. It follows that the writ must be denied and the action

DISMISSED.

THE other judges concur.