STATE, EX REL. JOHN WILLIAMS, APPELLEE, V. HARLEY G.
MOORHEAD, APPELLANT.*

FILED JANUARY 7, 1914.   No. 18,241.

1. **Elections: ELECTION COMMISSIONER: DUTIES.** Chapter 36, laws
1913, which creates the office of election commissioner for counties
having a population of 150,000 or more, places great responsibility
and imposes important duties upon the election commissioner. He
is required to exercise many powers theretofore confided to judges
of election.

2. ———: ———: ———. It is the duty of the election commissioner
to determine whether the applicant for registration is or is not
entitled to vote. He is not a court nor judge, but he must consider
evidence and determine questions of fact and law; his action is
quasi-judicial, and he is given a reasonable legal discretion in his
investigation of the qualifications of persons applying for regis-
tration.

3. ———: ———: PURPOSE OF STATUTE. The purpose of the act (laws
1913, ch. 36) was to remedy the loose and careless practices that
had prevailed in conducting elections. The election commissioner
is not controlled by precedents of that nature.

4. ———: REGISTRATION ACT: VALIDITY. "A registry law, to be valid,
must be reasonable and impartial, and calculated to facilitate and
secure the constitutional right of suffrage, and not to subvert, or
injuriously, unreasonably, or unnecessarily restrain, impair, or
impede the right." *State v. Corner*, 22 Neb. 265.

5. ———: ELECTION COMMISSIONER: NATURALIZED PERSONS: REGISTRA-
TION. The election commissioner is not obliged to require foreign-
born persons who have been naturalized to submit and leave with
the commissioner his naturalization papers. If they are presented
and the commissioner is satisfied of their regularity, he may return
the papers to the applicant for registration. But in determining
the fact of naturalization he is not concluded by the oath or sworn
statement of the applicant. He may require the production of the
papers or a duly certified copy thereof.

6. ———: ———: REGISTRATION. Decisions which hold that an abso-
lute denial of the right to vote to all persons whose names do not
appear upon the registration list is unconstitutional are not ap-
plicable. Our statute makes ample provision for full investigation
by the election commissioner and his supervisors, which may be
continued, if necessary, to the time the vote is offered.

---

*On rehearing, judgment of district court affirmed. See opinion,
96 Neb. ———.

State, ex rel. Williams, v. Moorhead.

7. ———: NATURALIZED PERSONS: REGISTRATION. Whether the applicant for registration, if the record of his naturalization is destroyed and he has lost his certificate thereof, can be required to take out new naturalization papers, or may prove the contents of the record, as in ordinary cases of lost or destroyed instruments, is not decided.

APPEAL from the district court for Douglas county: JAMES P. ENGLISH, JUDGE. *Reversed and dismissed.*

*Grant G. Martin, Attorney General, Frank E. Edgerton, J. J. Sullivan, E. W. Simeral, George A. Magney* and *Harley G. Moorhead,* for appellant.

*Benjamin S. Baker* and *L. J. TePoel, contra.*

SEDGWICK, J.

The last legislature enacted a statute for counties having 150,000 or more inhabitants, providing a system of registration of voters. Laws 1913, ch. 36. The statute created the office of election commissioner to be appointed by the governor of the state. He was clothed with extensive and perhaps unusual powers and duties, and his term of office, after the first appointment, was fixed at two years. Under this statute an election commissioner was appointed for Douglas county who entered upon the duties of the office. He was authorized to appoint a "chief deputy," and other deputies and employees, and to designate his chief deputy and others of his deputies and employees to act with himself as supervisor of registration, who should serve "as the election commissioner shall direct." The statute required the election commissioner to "provide for a new general registration of all voters in the county, who may be required by law to register." The relator applied to the election commissioner for registration as a voter and was refused. He then applied to the district court for Douglas county for mandamus to compel the commissioner to register him as a voter. The district court granted a peremptory writ as prayed, and the commissioner has appealed.

When the relator appeared before the commissioner for registration, he stated that he was foreign-born, and had been naturalized. He did not present his naturalization papers, and for that reason the commissioner refused to register him as a voter. The only defense presented by the answer and evidence is that the relator failed to present competent proof of naturalization. It is contended that oral evidence is incompetent; that the record of naturalization or a certified copy thereof is the proof required. .

The right of suffrage is absolute; qualified electors cannot be deprived of the right to vote. This right is guaranteed by the twenty-second section of the first article of the constitution. "All elections shall be free; and there shall be no hindrance or impediment to the right of a qualified voter to exercise the elective franchise." No statute or rule of registration of the commissioner that will necessarily prevent the exercise of the franchise can be valid. Article VII of the constitution prescribes the qualifications of electors, and no others can be required. The purpose of registration laws is to protect and purify the right of suffrage, and not to deny it. *State v. Leavitt,* 33 Neb. 285.

The act of the legislature is sufficiently broad and comprehensive to justify the action of the commissioner, which is complained of, if it would be within the power of the legislature itself to make such requirement. The act places great responsibility upon the commissioner: "Said commissioner shall be responsible for the enforcement of the provisions of this law, for the competency, integrity and conduct of his deputy, clerks, employees and all registration and election officials appointed by him, and said commissioner shall be removed when it shall appear that said commissioner has been derelict in the performance of the duties of his office whereby incompetent, negligent or corrupt officers of registration or election have been appointed or whereby in any election district of said county a fair and impartial registration or election was not ob-

tained or the election laws enforced." Laws 1913, ch. 36, sec. 5.

He is required to "make all necessary rules and regulations not inconsistent with this act in regard to general, city, special and primary elections, and registration of voters in such counties, and shall have charge of and make provisions for all elections, general, special, local, municipal, city, state and county and all others of every description to be held in such county or any part or political subdivision thereof at any time, except as herein otherwise provided." Section 1.

He must appoint a deputy, and "shall appoint such other deputies, inspectors of election, supervisors of registration, peace officers to serve at election, and such other assistants as may be necessary for the performance of the duties of his office, the registration of voters, and the conduct of elections in such counties. Such employees shall be divided between all political parties as nearly as practicable in proportion to the number of votes cast in said county at the preceding general election for the office of governor by said parties, respectively." Section 4.

"The election commissioner shall, using his own judgment and discretion and not restricted by any recommendation whatever, at least thirty days prior to the first general, city, special or primary election after this act becomes a law, select and appoint three qualified persons as judges of election for each election district in such county." Section 6.

He is required to "receive the application for registration of all such legal voters as shall personally apply for registration at the office of the commissioner or other places designated for registration, who then are or on the day of election next following the day of making such application will be entitled to vote." Section 12a.

This imposes upon him the duty to determine who "will be entitled to vote." Undoubtedly he is given a reasonable legal discretion in his investigation of the qualifications of the person applying for registration.

The commissioner and his supervisors are not judges, nor do they in a strict sense act as judges, but they must consider evidence, and determine questions of law and fact, and in so doing they act judicially. See note to *Blake v. Brothers,* 11 L. R. A. n. s. 501 (79 Conn. 676); *Pike v. Megoun,* 44 Mo. 491; *Perry v. Reynolds,* 53 Conn. 527; *Anderson v. Baker,* 23 Md. 531. Persons of foreign birth must furnish evidence of naturalization, or that they have declared their intention to become citizens "conformably to the laws of the United States." Const., art. VII, sec. 1. To be a citizen and voter in this country is a privilege of so great importance as to induce the most careless to preserve the evidence of his citizenship which is furnished him by the government. We cannot believe that the discretion of the legislature, and of the commissioner it has provided for, is so limited by our laws that the commissioner cannot require the production of evidence of such importance and which is so easily obtained.

It is not necessary to determine what the duty and power of the commissioner would be if the record of the applicant's naturalization had been destroyed, and his certificate was lost; whether he must take out new papers or might prove the contents of the record as in ordinary cases of lost or destroyed instruments. This question is not presented by this record.

In *State v. Corner,* 22 Neb. 265, the law is stated in the syllabus: "A registry law, to be valid, must be reasonable and impartial, and calculated to facilitate and secure the constitutional right of suffrage, and not to subvert, or injuriously, unreasonably, or unnecessarily restrain, impair, or impede the right." In the opinion, written by our present Chief Justice, the correct rule is stated: "The true rule undoubtedly is that the legislature may require registration under reasonable restrictions as proof of the possession of the qualifications prescribed by the constitution, but that the voter shall have the right to prove himself to be an elector, register and vote at any time prior to the closing of the polls on election day. It would doubtless be competent to require more proof on

that day than if the voter had previously registered, but it should be left within his power to furnish such proof, if it existed, and exercise his right." The registration laws are remedial in their nature, and are to be liberally construed to promote an expression of the will of the voters, and for no other purpose. *Bingham v. Broadwell*, 73 Neb. 605. In *State v. Boyd*, 31 Neb. 682, 710, it is said: "Naturalization cannot be established by parol" —citing many cases upholding that proposition.

It appears that the relator has been a resident of the city of Omaha for more than 30 years; that he is a man of high character and attainments; and that during all this time he has exercised the elective franchise in the city of Omaha. The object of the act in question was to remedy some of the loose and careless practices that had prevailed, and its enactment was notice to all parties interested that a reform was necessary. Upon the trial in the district court he testified that he had been naturalized in Suffolk county, Massachussetts, and that he lived at the time in Essex county, and could not remember whether he was naturalized in the "county court or the United States."

The statute (laws 1913, ch. 36) requires the applicant for registration to swear or affirm "that you will fully and truly answer all such questions as shall be put to you, touching your place of residence, name, place of birth, your qualifications, as an elector, and all other questions provided for by the laws of this state affecting your right to register and vote therein." Section 12a. A record must then be made of his answers "as the fact may be stated," whether he is naturalized or native, and, "under the column 'Date of papers,' the date of naturalization if naturalized, as the same shall appear by the evidence of citizenship submitted or presented by the applicant in compliance with the requirements of this act." Section 12a. The relator understands this statute to mean that these preliminary answers under oath are conclusive upon the commissioner, so that, if the applicant in that examination says that he is naturalized, the matter is thereby con-

cluded. We do not so understand the statute. The commissioner is required to enter in the record "the date of naturalization if naturalized." This fact he must determine from the evidence "submitted or presented by the applicant." The commissioner is not obliged to require the applicant to submit and leave with the commissioner the naturalization papers. If he presents them, and the commissioner is satisfied of their regularity, he may return the papers to the applicant. The words, "submitted or presented," are apt words to convey the idea of such a distinction. We cannot construe this clause as equivalent to "as the same shall appear by the oath (or sworn statement) of the applicant." Something as plain and direct as the latter phrase would be necessary to deprive the commissioner of all discretion in the matter, in view of the duty imposed upon him to determine who are and who are not legal voters.

In *Attorney General v. City of Detroit,* 78 Mich. 545, 562, the supreme court of Michigan says that a law that requires foreign-born residents to produce their naturalization papers, "while it permits a native-born citizen to prove his standing as a voter by his own testimony," is "not only unjust, but unconstitutional, unless applied to all." Our statute is not subject to this criticism; it requires all applicants for registration to answer the same preliminary questions as to place of birth, age and similar matters of which his oath is the best and often the only available evidence. If this evidence shows that the applicant is disqualified without something further, some solemn judicial proceeding of which a permanent record is required to be kept, and of which the best evidence is furnished to the applicant, surely it is not a violation of the constitution to give the officers, whose duty it is to determine the qualification of the applicant, power to require the production of the evidence which the law requires to be preserved for that and other purposes. Moreover, the Michigan statute was held unconstitutional upon other and distinct grounds, sufficient in themselves

to require the decision reached. This language of the court, then, may be regarded as unnecessary in that case.

Other cases are cited which hold that an absolute denial of all right to vote to all persons whose names do not appear upon the registration list is unconstitutional as restricting the franchise, But these decisions are under statutes which provide for summary action of merely administrative officers in preparing the list. Our statute makes ample provision for full investigation. Many of the duties heretofore devolved upon the judges of election are now imposed upon the commissioner and his supervisors, and they may continue the investigation, if necessary, to the time the vote is offered.

We think that under the evidence in this case the commissioner did not exceed his authority in refusing to register the relator, and the judgment of the district court is reversed and the cause dismissed.

REVERSED AND DISMISSED.

LETTON, J., not sitting.