Avery, J.
The adoption of the 19th Amendment to the Constitution of the United States conferred upon women no greater or different right with respect to the exercise of the elective franchise than had theretofore been possessed and enjoyed by men under the constitutions and laws of the states. This case is therefore to be considered without regard to the sex of the relator. The question then is whether Section 4906, General Code, in the respect that it requires the age in years and months' of an applicant for registration to be stated, is unconstitutional, in that it constitutes a denial or abridgment of the constitutional right of citizens to vote, or unreasonably or unnecessarily restrains, impairs, or impedes the exercise of that *373 right conferred by Section 1, Article V of the Constitution of Ohio. We have no difficulty in answering that question in the negative.
As modified and controlled by the 19th Amendment to the Constitution of the United States, Section 1, Article V of the Constitution of Ohio, reads:
“Every * * * citizen of the United States, of the age of twenty-one years, who shall have been a resident of the state one year next preceding the election, and of the county, township, or ward, in which he [or she] resides, such time as may be provided by law, shall have the qualifications of an elector, and be entitled to vote at all elections.” Section 4903, General Code, so far as pertinent, provides:
“In making registration, each applicant shall answer the inquiries made by the registrars.”
Section 4906, General Code, in its entirety, is as follows:
“In entering his “number/ such number shall be filled up consecutively, leaving no blank. In “name’ they shall include his Christian name or names in full, as well as his surname. In the column as to present place of residence, shall be stated the name of the street, avenue, alley or way in which his dwelling is located or access thereto is usually had, and the number of the house, if it has one. If it has no number, a definite description by which it can easily be fouiicl must in every case be given and entered. If there are more houses than the one under the number so given, or if there are other families, tenants or lodgers in that in which the applicant resides, he must specify in which house *374 and on which floor and whether front or rear, of such house he resides, and the number and location of his tenement.-
“In the column as to ‘place of residence at last registration’ shall be stated his then postoffice address, with street number, if any, and, if his residence was the same, the words ‘same residence’ shall be entered.
“In the column as to ‘age,’ the years and months must be stated, and, if the applicant is not at the time twenty-one years of age, or more, the words ‘not of age’ must be inserted in the column of ‘remarks.’
“In the column as to ‘occupation,’ his occupation and the name of his employer, if he has one, must be stated.
“In the column as to ‘term of residence,’ the periods of years and months of his residence in the precinct and state must both be stated.
“In the column as to ‘nativity,’ the name of the state or foreign country must be given.
“In the column as to ‘naturalized,’ the answer ‘yes’ or ‘no’ or ‘native’ must be given and stated.
“If naturalized, the proper certificate or evidence must be produced, unless such certificate has been filed with the board of deputy state supervisors, as herein provided.
“In the column as to ‘married or single,’ if the head of a family, it must be so stated.
“Nothing shall be entered in the column as to ‘personal description’ until the applicant has signed the register, and then lines shall be drawn unless the applicant has been challenged, or signs by mark, *375 in either of which events, the color of his hair, the color of his eyes, apparent height, apparent weight and other means of identifying him, such as the loss of a member, whether smooth-shaven or otherwise, and description of birth-marks or scars, if any, shall be stated.
“The column as to ‘date of registration’ must be filled with the date on which the applicant actually . registered, and none other.”
The registers in which these statements are to be entered are provided for in Section 4892, General Code.
Subsequent sections further provide:
Section 4908.
“After the answer of the applicant to the questions under the head of each column, except the questions as to ‘personal description’ has been properly entered by the registrars, in his presence, and not until then, he must enter his signature on the same line and in both of the registers in the column ‘signatures’.”
Section 4909.
“Each of the registrars shall enter the statement of the applicant in the duplicate register kept by him, and both shall be signed by the applicant.”
Section 4911.
“No person shall be entitled to vote at any election in such city unless he shall establish his residence by causing himself to be registered in the precinct where he shall claim to reside, in the manner and at the time required herein, nor shall a ballot be received by the judges at any election under any pretense whatever unless the name of *376 the person offering it shall have been entered on both of the registers of the precinct in which he claims to vote, as herein provided.”
The authority of the legislature to enact registration laws was sustained and the limits of that power enunciated by this court in the case of Daggett v. Hudson, 43 Ohio St., 548. We think that the statutes here in question fully comply with the requirements of the rule there laid down. They most certainly do not fall within the category of statutes held invalid by this court in Monroe et al. v. Collins, 17 Ohio St., 665, the manifest tendency and effect if not the very object and intention of which was to exclude persons having a visible admixture of negro blood from voting.
But if there were any doubt about the matter, we should be compelled to resolve that doubt in favor of the validity of the statute.
In Monroe v. Collins, supra, Welch, J., said at pages 685 and 686:
“The power of the legislature in such cases is limited .to laws regulating the enjoyment of the right, by facilitating its lawful exercise, and by preventing its abuse. All reasonable latitude should be allowed to the legislature in the exercise of this power of regulation, and every reasonable intendment in favor of the constitutionality of laws enacted for that purpose, should be made by the courts. Such laws are not to be held unconstitutional unless clearly so, and if they will at all bear a construction which makes them consistent with the constitution, they are to receive that construction, and so to be upheld.”
*377 We confess that the argument here, that Section 4906, General Code, is unconstitutional because of the requirement that the applicant’s age be stated in years and months, strikes us as rather strained. While the question was not there directly presented, it is significant that the act considered by this court in Daggett v. Hudson, supra, contained a provision requiring the applicant for registration to state his age, and no claim was made that it was unconstitutional on that ground. But the matter being now directly presented, we have no hesitation in saying that we can see no good ground in reason or principle upon which to base a claim of the unconstitutionality of such provisions.
The primary object and purpose pf a registration law is to provide a uniform method for ascertaining and determining whether a voter possesses the necessary qualifications to exercise the elective franchise, and to prevent fraud and abuse of this right by preparing in advance an authentic list of those who are qualified to vote at an election.
In Daggett v. Hudson, supra, Atherton, J., said at page 558:
“Registration is one of the modes in which purity in elections may be attained,,and every honest and qualified voter has an interest in securing the integrity of the' ballot and excluding the ballots of the dishonest and unqualified.”
The statutes in question here do not add any ■new qualifications to the voter other than those required by the constitution; they simply prescribe rules of evidence relating to the proof of such qualifications.
*378 If it could be successfully contended that an applicant for registration need not state his or her age, but that the answer may be limited to a mere statement that t-he applicant is of legal.age, it would follow, by parity of reasoning, that the vast number of floating population of municipalities would not be required to state how long they had been residents of the state, county and ward, but would only be required to state that they had been residents of the state, county and ward the respective periods required by law, and could be interrogated no further, and so the whole object and purpose of the registration laws would be defeated and the door opened to fraud and abuse of the elective franchise.
So, on principle, we do not think the requirement of the statute as to stating age to be in any way an injurious, unreasonable or unnecessary restraint, impairment or impediment on the exercise of the elective franchise. On the contrary, we think that it is a reasonable, uniform, and impartial regulation, calculated to facilitate and secure the exercise of this right and to prevent its abuse within the rules laid down in Monroe v. Collins and Daggett v. Hudson, supra.
We are, however, not without authority in the matter.
The cases of Capen v. Foster, 12 Pick., 485, State, ex rel. Wood, v. Baker, 38 Wis., 71, and Edmonds v. Banbury, 28 Iowa, 267, are cited with approval by Atherton, J., delivering the opinion of the court in Daggett v. Hudson, supra.
*379 In Capen v. Foster, Shaw, C. J., in the opinion, at page 491, said:
“The right of any individual person, claiming the privilege of voting, may involve an inquiry into the fact of citizenship, sex, o age, domicile * * * and the fact of his being a pauper or under guardianship, or otherwise. All these are questions of fact, open to proof of various kinds, and sometimes, though rarely, requiring considerable research and investigation. * * * The constitution by carefully prescribing the qualifications of voters, necessarily requires that an examination of the claims of persons to vote on the ground of possessing these qualifications, must at some time be had, by those who are to decide on them.”
In State, ex rel. Wood, v. Baker, at page 86, Ryan, C. J., said:
“Statutes cannot impair the right, though they may regulate its exercise. * * * Then statutes may require proof of the right, consistent with the right itself.”
In Edmonds v. Banbury, Dillon, C. J., said at pages 271 and 272:
“And it is equally clear to our minds that the legislature may regulate the exercise of this right, leaving the right itself untouched. They may, for example, make reasonable provisions for determining the age, length of residence, etc., of persons who offer to vote.
“* * * The legislature •* * * may * * * prescribe regulations to determine whether a given person who proposes to vote possesses the required qualifications; and these regulations are valid, pro- *380 ■ vided they do not amount to a denial or invasion of the right conferred by the Constitution.”
There are other cases more directly in point.
In the case of State, ex rel. Cothren, v. Lean, 9 Wis., 279, the question was as to the validity of a statute of that state authorizing inspectors of elections to examine under oath a challenged voter according to a prescribed “series of questions adapted in each instance to the cause of the challenge, and calculated to draw out from such person the truth as to whether such cause of challenge existed against him or not,” and, in paragraph five of the syllabus, it was held:
“It is competent for the legislature to prescribe questions to be propounded to voters, calculated to draw from them the proof of their qualifications to vote at an election, and require the voter to answer them before he can vote; but this does not add any new qualification to the voter.”
In Southerland v. Norris, 74 Md., 326, where the question was as to the legal residence of one Key, and the validity of a statute providing for presumptive proof of nonresidence, the court held the statute constitutional. In delivering the opinion of the court, McSherry, J., said at page 328:
“The qualifications of a voter in this State are prescribed by the first section of Article one of the Constitution of Maryland. Those qualifications are that he shall be a citizen of the United States of the age of twenty-one years or upwards, and that he shall have been a resident of the State for one year, and of the Legislative District of Baltimore City, or of the *381 county in which he offers to vote, for six months next preceding the election at which he offers to vote. Before he can exercise his tight to vote he must be duly registered. These qualifications, fixed by organic law, can neither be enlarged nor curtailed by the General Assembly; but there is no pro vision of the Constitution, as there is no principle of constitutional law, that denies to the Legislature the power to enact rules of evidence by which the facts establishing the right to vote may be proved. The Constitution itself merely designates the qualifications, and then leaves the Legislature free to declare by what evidence those qualifications must be shown to exist. It is perfectly competent to the Legislature to say what shall and what shall not be admissible evidence to prove a particular fact; and this it has repeatedly done.”
And, continuing, he says at pagés 330 and 331: “The section in question does not purport to, and does not in fact, add anything to the qualifications of age and residence as "they are fixed in the constitution. It deals exclusively with the evidence by which one of those qualifications — that of residence — shall be proved, just as it might have done with regard to the proof of age.”
In Pope v. Williams, 98 Md., 59, it was held that the legislature may lawfully require a person coming into the state to take up his residence to evidence that fact to entitle himself to the right to exercise the elective franchise by registering the intent in a public record, and may deny him the right to have his name placed on the registry of voters until the expiration of a certain time after *382 the making of such record, and that the privileges and immunities of citizens, or the equal protection of the laws, guaranteed by the Federal Constitution, are not denied to a citizen removing from the District of Columbia to a state by requiring him, as a condition to the exercise of the elective franchise, to record in a public record his intention of becoming a citizen a certain time before he can qualify as a voter.
Page, J., delivering the opinion of the court, said at page 69:
“Nor does the statute impose qualifications for voting, other than those prescribed by the Constitution. It leaves those qualifications precisely as they were before. It deals exclusively with the evidence necessary to establish residence, by providing what the evidence of residence shall be.”
The judgment of the court of appeals of Maryland in this case was affirmed by the supreme court of the United States in Pope v. Williams, 193 U. S., 621.
There are no doubt many other cases equally as cogent, but further search seems unnecessary.
Finding, as we do, the statutes in question here to be constitutional, the application of the petition for a writ of mandamus to compel the defendants to'register the relator, otherwise than in accordance with the provisions relating to the statement of her age in years and months, will be denied.

Writ refused.

Jones, Matthias, Johnson, Wanamaker and Robinson, JJ., concur.