### WILKINSON v. QUEEN et al.

Court of Appeals of Kentucky.

May 7, 1954.

As Extended on Denial of Rehearing June 25, 1954.

Mac Stephenson, J. W. McKenzie, Ashland, for appellant.

Harris W. Coleman, Louisville, amicus curiae.

E. Poe Harris and S. S. Willis, Ashland, for appellee.

DUNCAN, Justice.

This appeal is from a judgment dismissing appellant's complaint filed for the purpose of contesting a local option election held in the city of Catlettsburg on June 23, 1953. The result of the election as certified by the commissioners was a majority of 221 votes against the sale of alcoholic beverages within the territory affected. The facts are not in dispute and the questions presented are entirely of law.

It is conceded that 278 persons who voted in the election did not sign the comparative signature book as required by KRS 117.655. Appellant took the deposition of 227 of these voters, 99 of whom testified that they voted against the sale of alcoholic beverages. The remaining 128 persons who testified refused on constitutional grounds to reveal how they voted. The lower court overruled a motion to require these voters to disclose how they voted upon the theory that they were legal voters.

Counsel for appellant contend that the persons who failed to sign the comparative signature book were illegal voters and that the court should require them to reveal how they voted and finally determine the results of the election by deducting their votes. Appellees insist that the comparative signature law contravenes Section 6 of our state Constitution; or if constitutional, it is directory rather than mandatory and in any event is not applicable except in cities of the first class and counties outside of cities of the other classes.

KRS 117.745, in effect, provides that no person shall vote at any primary, regular or special election held in a city of the first class without first signing the comparative signature book. This section was adopted by the 1952 General Assembly and merely re-enacts KRS 117.310, which was an Act of 1944. KRS 117.655, also adopted at the 1952 session, extends the provisions of KRS 117.745 to "all counties as well as, to cities of the first class". The constitutionality of the comparative signature requirement was impliedly recognized in Beauchamp v. Willis, 300 Ky. 630, 189 S.W. 2d 938; and Gross v. Helton, Ky., 267 S.W.2d 67. In neither of these cases was its constitutionality challenged or directly considered. It is in this case, and the importance of the question requires our consideration.

Section 6 of our Constitution provides that all elections shall be free and equal. Section 145 provides that every male citizen of the United States of the age of twenty-one years, who has resided in the state one year, in the county six months, and in the precinct in which he offers to vote sixty days, next preceding the election, shall be a legal voter unless there has been a previous conviction of treason, felony, bribery in an election, or such high misdemeanor as the General Assembly may declare shall operate as an exclusion from the right of suffrage. Section 147 provides that the General Assembly shall in cities and towns having a population of five thousand or more, and may in other instances, require the registration of voters, and that when registration is required, only persons registered shall have the right to vote. Section 153 provides that the General Assembly shall have power to provide by general law for the manner of voting. Appellees insist that since the Constitution expressly fixes voting qualifications, the General Assembly has no constitutional authority to add any additional qualification except registration.

We agree that the Legislature cannot prescribe voting qualifications in addition to those enumerated in the Constitution. It is a generally accepted rule that the enumeration in a state constitution of the classes of citizens who shall be permitted to vote is considered as to all matters within the purview of the constitutional provision, as a complete and final test to the exercise of the voting privilege. The Legislature can neither take from, nor add to, the qualifications there set out unless the power to do so is expressly, or by necessary implication, conferred upon it by the constitution itself. However, it is clear that even though the constitution prescribes the qualifications of a voter, there is a wide field for legislative action in determining

how such qualifications shall be ascertained and in prescribing regulations for the prevention of fraud and abuses in elections. Accordingly, the Legislature has the authority to make reasonable regulations for the exercise of the legislative franchise so long as it does not deny the voting privilege itself, either directly or by rendering its exercise so difficult and inconvenient as to amount to a denial. Edmonds v. Banbury, 28 Iowa 267, 4 Am.Rep. 177; State ex rel. Williams v. Moorhead, 95 Neb. 80, 144 N.W. 1055; Fitzmaurice v. Willis, 20 N.D. 372, 127 N.W. 95; State ex rel. Klein v. Hillenbrand, 101 Ohio St. 370, 130 N.E. 29, 14 A.L.R. 255.

■ The only requirement of the statute before us is that the voter sign the comparative signature book before he casts his vote. It does not deny the voting privilege or render its exercise so difficult or inconvenient as to amount to a denial of the right to vote. It is to be noted that special provision is made for those who are unable to write since the statute is not applicable to those who sign their registration record by mark. We have no trouble, therefore, in concluding that the comparative signature law does not violate any provision of our Constitution.

■ In Beauchamp v. Willis, 300 Ky. 630, 189 S.W.2d 938, it was indicated that the comparative signature law was mandatory, and it was expressly so held in Gross v. Helton, Ky., 267 S.W.2d 67. It is unnecessary to again review our reasons for so holding. We still adhere to the views expressed in the Gross opinion.

■ Neither are we impressed with the contention that the term "all counties as well as to cities of the first class" as used in KRS 117.655 has the effect of extending the comparative signature law only to those portions of counties which are outside cities of the latter five classes. We think the statute was intended to make KRS 117.745 state-wide in its application. It follows that the voters who did not sign the comparative signature book were illegal voters and the court should have required them to disclose how they voted.

Appellant insists that the local option election was void because a special school tax election called under the provisions of KRS 160.477 was held on the same day. It is insisted that this was in violation of KRS 242.030(3), which provides:

"The election [local option election] shall not be held on the same day that a primary or general election is held in the territory or any part of the territory, nor within thirty days next preceding or following a regular political election."

■■ The school election was held for a district outside the city of Catlettsburg, but the voting place for Argo Precinct, which included parts of the city and the outlying school district, was inside the city. Under this arrangement, residents of the school district voted in the city although residents of the city did not vote in the school election and residents of the school district did not vote in the local option election. We do not think the school election was held in the city within the meaning of KRS 242.030(3). The statute was clearly intended to apply only to elections in which the voters of the proposed local option territory were participants. This conclusion makes it unnecessary to determine whether the school election was a regular political election as that term is used in the statute.

We have not undertaken a computation to determine whether or not the results of the election will or may be changed by eliminating votes cast by voters who did not sign the comparative signature book. Since the contest was dismissed upon the theory that such votes were properly included in the count, the results of the election after the deduction of such votes should be first determined by the lower court. If necessary to such determination, the court should require the voters who did not sign the book to reveal how they voted.

In Gross v. Helton, supra, we declared the election void where it appeared that the results of the election had been changed by deducting votes of those who did not

sign the comparative signature book. It also appeared in that case that there had been a dereliction of duty upon the part of some election officers in informing voters that it was not necessary for them to sign the book. In this case, it does not appear that the results of the election will necessarily be changed by such failure. Therefore, we would be acting prematurely at this stage if we should declare the election void. The consideration of that matter should properly await a determination of whether the results of the election have been changed by the failure.

The judgment is reversed for proceedings consistent with this opinion.